**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Melissa Dee BAKER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 4, 2008.

Filed Dec. 19, 2008.

---

Robert M. Buttner, Scranton, for appellant.

Lisa A. Gillick, Assistant District Attorney, Scranton, for Commonwealth, appellee.

BEFORE: STEVENS, FREEDBERG, and POPOVICH, JJ.

1. The Information filed against Baker indicates that the crimes occurred between May 1, 2004 and December 1, 2005.

2. Rule 404(b) states:
    (b) Other crimes, wrongs, or acts.
    (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
    (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
    (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.
    (4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

OPINION BY STEVENS, J.:

¶ 1 Melissa Baker challenges a February 20, 2007 judgment of sentence entered in the Court of Common Pleas of Lackawanna County. We affirm.

¶ 2 Baker was charged with aggravated assault, endangering the welfare of children, and simple assault as the result of her abuse of E.B. and J.B., her two minor step children, culminating in an attack on then three year old E.B. which broke E.B.'s arm.[1] Baker filed omnibus pretrial motions, seeking suppression of evidence, and the Commonwealth filed an answer in response. Pretrial motion filed 5/8/06; Answer filed 5/18/06. The Commonwealth then filed a "Notice of Commonwealth's Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts Pursuant to Rule 404(b)" and a notice of its intent to introduce the out of court statements of the children pursuant to 42 Pa.C.S.A. § 5985.1.[2] Baker did not file an answer to

Pa.R.E. 404(b)(1)-(4).
    Here, the Commonwealth sought to introduce the testimony of (1) Melissa Steele, Baker's next door neighbor, who observed Baker's behavior toward the children from June, 2004, through May, 2005, (2) Sandra Baker and Darren Demorrow, who resided in the same building with Baker from January 2004 until August 2004, (3) Mary Lou Karwoski, who found then six and a half year old J.B. wandering the street, dirty, shoeless and alone, at 6:15 a.m. on June 10, 2005, after Baker had locked her out of the house, (4) Nellie Connelly, a Youth Advocate working with J.B. since November 2003, who witnessed Baker intimidate J.B. into refusing food offered by Connelly, (5) Children and Youth Services, which received numerous reports of Baker's abuse of the children beginning July 30, 2003, (6) Jennifer Tyme, the children's biological mother, whom Baker attacked on August 15, 2005, resulting in convictions for harassment and disorderly conduct, and (7) Jeffrey Steinberg, a Youth Advocate Counselor punched in the face by Baker on September 15, 2005, when he tried to stop her from physically attacking Tyme,

either of the Commonwealth's notices. On September 18, 2006, the trial court denied Baker's suppression request, and granted the Commonwealth's request to introduce the prior bad act evidence. Order filed 9/18/06. The question regarding the children's testimony was left until trial.

¶ 3 A jury trial commenced on November 13, 2006, and lasted five days.[3] Baker was subsequently found guilty on November 21, 2006. She was sentenced on February 20, 2007, to an aggregate term of seven and one half to 16 years' imprisonment. Baker subsequently filed post-sentence motions, but the motions were denied and she now appeals her judgment of sentence to this Court, asking us to determine the following:

1. Whether the Trial Court erred in failing to suppress the Defendant's statements to the Pennsylvania State Police?

2. Whether the Trial Court erred in admitting evidence of prior bad acts, involving the relationship between the Defendant and Jennifer Tyme, as evidence of Motive and Intent?

3. Whether the Trial Court erred in allowing the commonwealth to play a DVD of a child, on rebuttal, as a prior consistent statement?

4. Whether the Trial Court erred in failing to instruct the jury on prior inconsistent statements of J.B.?

5. Whether the Trial Court erred in failing to instruct the jury on the voluntariness of the Defendant's statements admitted at the time of trial?

6. Whether the Trial Court erred in failing to merge the sentence received by the Defendant?

7. Whether the Trial Court abused its discretion in imposing a sentence which exceeded the Pennsylvania Sentencing Guidelines which was manifestly excessive and failed to state sufficient reason on the record for such sentence?

Appellant's brief at 7.

¶ 4 Baker's first claim challenges the denial of her request to suppress statements she made to police. Baker specifically avers that she was interrogated by police without being given Miranda warnings, in violation of her federal and state constitutional rights. A hearing addressing Baker's pre-trial motions, including this suppression request, was held on May 25, 2006, and on September 18, 2006 the lower court refused to suppress her statements.

When we review the ruling of a suppression court we must determine whether the factual findings are supported by the

resulting in Baker's arrest for simple assault. The Commonwealth asserted that the witnesses would testify to actions Baker took which would prove motive, intent, malice and course of conduct.

Section 5985.1, pertaining to the admissibility of certain statements, directs as follows:

(a) GENERAL RULE.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to rob-

bery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2) the child either:
(i) testifies at the proceeding; or
(ii) is unavailable as a witness.
42 Pa.C.S.A. § 5985.1

3. The hearing transcripts consist of eleven volumes, containing more than 1600 pages.

record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are error.

*Commonwealth v. Mayhue*, 536 Pa. 271, 300, 639 A.2d 421, 435 (1994). Viewed as directed by this standard, the evidence presented during the pretrial hearing reveals the following: Pennsylvania State Police Trooper Patrick McGurrin testified that he had received a report from Children and Youth Services, relaying suspicions that E.B.'s broken arm was the result of child abuse at the hands of Baker. N.T. 5/25/06 at 4, 14–15. As part of his investigation of the suspected abuse, Trooper McGurrin telephoned Baker and asked if she would come to the police station to be interviewed regarding E.B.'s injury. *Id.* at 5, 14. Baker consented, and appeared at the station with her two biological children. *Id.* at 5–6. One of the station's clerks watched Baker's children in the next room while she was interviewed by Trooper McGurrin and Corporal Ben Clark. *Id.* at 7, 16. The rooms were separated by a window, through which the children could be heard, and Baker was agreeable to this arrangement. *Id.* at 7, 20, 26. During the interview, the door to the interview room was closed, but not locked, and Baker was not restrained in any way. *Id.* at 7–8. Baker was seated closest to the door, with her back to it. *Id.* at 18.

¶ 5 Trooper McGurrin began the interview by thanking Baker for coming, and explaining to her that she was not in custody, was not under arrest, and was free to end the interview at any time. *Id.* at 9.

He also told her that no matter what she said during the interview, she would not be going to jail that day. *Id.* After hearing these explanations, Baker agreed to continue the interview. *Id.* Trooper McGurrin specifically testified that Baker was never told that there would be any consequences if she refused to participate in the interview. *Id.* at 10–11. The interview lasted an hour and forty minutes. *Id.* at 22. During the course of the interview, Baker initially denied having any knowledge of how E.B.'s arm was broken, but eventually admitted that she had inflicted the injury by grabbing and pulling the child's arm. *Id.* at 11–12, 16.

¶ 6 At some point during the interview, Baker said she did not want to talk anymore, and Corporal Clark stood up and opened the door to the interview room. *Id.* at 13. Baker then stated that she wanted to talk to Trooper McGurrin, not Corporal Clark, and continued speaking. *Id.* Eventually, Baker again indicated that she was "done talking." *Id.* at 13–14. At that point the three left the room, and Baker retrieved her children and left the station. *Id.* Trooper McGurrin specifically testified that Baker was never told that if she did not tell the truth she could lose her children. *Id.* at 18.

¶ 7 The crux of Baker's suppression claim is that because she believed that she was not free to leave, she was in "custody" and Miranda warnings were required. We disagree.

The warnings articulated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), become mandatory whenever one is subjected to custodial interrogation. The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way." *Id. See also Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980).

*Commonwealth v. Brown,* 400 Pa.Super. 316, 583 A.2d 805, 809–810 (1990). "Police detentions only become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest." *Id.* at 810.

Whether a person is in custody for *Miranda* purposes depends on whether the person is physically [deprived] of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted.

*Commonwealth v. Levanduski,* 907 A.2d 3, 24–25 (Pa.Super.2006) (citing *Commonwealth v. Williams,* 539 Pa. 61, 74, 650 A.2d 420, 427 (1994) (internal citations omitted); *Commonwealth v. Mannion,* 725 A.2d 196, 200 (Pa.Super.1999) (en banc) (internal citations omitted)).

The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and

the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring *Miranda* warnings.

*Levanduski,* 907 A.2d at 25.

¶ 8 Here, we find that under the totality of the circumstances, Baker's interview with the police did not become the functional equivalent of an arrest. Of particular significance, we note that she was not transported against her will, but agreed to meet with the investigators. At the beginning of the interview, it was specifically explained to Baker that she was free to leave whenever she chose to, and she was seated in a position where the investigators were not blocking her access to the unlocked door of the room in any way. Baker was not handcuffed, shackled or otherwise restrained. The interview itself was not overly lengthy, lasting only an hour and forty minutes. During the interview, neither investigator used threats, force or intimidation. Trooper McGurrin clearly testified that Baker was never threatened with the loss of her children if she failed to tell the truth. Finally, true to their word, the investigators ended the interview when Baker indicated she was done talking, and at that point she left the station. Because Baker was not in custody, it was not necessary to give her *Miranda* warnings, and the trial court committed no error in refusing to suppress her statements on these grounds.

■ ¶ 9 Baker next suggests that the trial court erred in admitting evidence of prior bad acts, involving the relationship between Baker and Jennifer Tyme, the children's biological mother, as evidence of motive and intent. Appellant's brief at 16–

17.[4] We find this claim waived on several grounds.

¶ 10 Initially, we note that Baker never asserts that she actually objected to the introduction of the evidence she now claims was erroneously admitted. The lower court docket sheet contains no references to any answers, objections or responses filed by Baker to the Commonwealth's Notice of Intent to introduce the evidence under Pennsylvania Rule of Evidence 404(b). Further, in violation of Pa. R.A.P. 2117(c) and 2119(e),[5] Baker's brief fails to point to the location in the record showing that a challenge to the introduction of the evidence was raised before the trial court.[6]

¶ 11 Because Baker failed to raise this claim before the trial court, it is waived. Pa.R.A.P. 302;[7] Pa.R.Crim.P. 720(b)(1)(C);[8] *Commonwealth v. Henkel*, 938 A.2d 433, 445 (Pa.Super.2007), appeal denied by 955 A.2d 356 (Pa.2008); *Commonwealth v. Mawhinney*, 915 A.2d 107, 109 fn. 1 (Pa.Super.2006), *appeal denied*, 594 Pa. 677, 932 A.2d 1287 (2007).

¶ 12 Baker also argues that it was error for the trial court to allow the Commonwealth to play a DVD of a child, on rebuttal, as a prior consistent statement. Appellant's brief at 23. The DVD consisted of a recording of J.B.'s December 29, 2005 interview with Dr. Andrea Taroli, a forensic pediatrician who had examined and interviewed J.B. at the behest of the agencies investigating the child abuse allegations in question here. N.T. 11/16/06 part II at 68–69.

¶ 13 As we noted above, the Commonwealth initially filed notice that it intended to introduce the children's out of court statements under Section 5985.1. Notice filed 6/7/06. During trial, however, the cross-examination of J.B. prompted the prosecutor to note that at the appropriate time she believed she was entitled to play the DVD as a prior consistent statement. N.T. 11/14/06 at 71–72. As the trial neared its end, the Commonwealth indicated that it wished to introduce the DVD as rebuttal. N.T. 11/20/06 at 3. Baker re-

4. Baker specifically references the August 15, 2005 and September 15, 2005 incidents involving Jennifer Tyme contained in the Commonwealth's Notice of Intent. See footnote 2.

5. If an appellant has properly preserved an issue for appellate review, the appellant must include in his or her brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. Pa.R.A.P. 2119(e).

   Baker's brief wholly fails to abide by these directives, however. Although asserting that the trial court erred in admitting evidence of the two incidents, Baker does not provide any citation to the record to show that the evidence was ever actually admitted, much less that she objected to it.

6. As we have noted, the transcripts in this case are voluminous, and it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review. *Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa.Super.2006); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa.Super.2006); *Commonwealth v. Gooding*, 818 A.2d 546, 552 (Pa.Super.2003), appeal denied by 575 Pa. 691, 835 A.2d 709 (2003); *Commonwealth v. Hallock*, 722 A.2d 180, 181 (Pa.Super.1998).

7. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a).

8. "Issues raised **before or during trial** shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues." Pa.R.Crim.P. 720(b)(1)(c)(emphasis added). We note that Baker did not elect to include this claim in her post-sentence motion, but neither did she raise it before or during trial.

sponded by initially objecting to its admission on the grounds that Section 5985.1 only permitted the admission of out-of-court statements relating to certain crimes, which did not include endangering the welfare of children. N.T. 11/20/06 at 3–5. In conjunction with this claim, Baker argued that it would be impossible to separate the portions of J.B.'s statements relating to the endangering the welfare of children charge from those relating to the assault charges. *Id.* at 4–5. Baker also objected to introduction of the DVD on the grounds that it was cumulative and highly prejudicial. *Id.* at 5, 148. The Commonwealth responded by clarifying that it was not seeking to introduce the DVD under Section 5985.1, but instead wished to introduce it as a prior consistent statement in rebuttal to the cross-examination of J.B. *Id.* at 6. The trial judge held off on ruling on Baker's objection, and Baker then testified on her own behalf. *Id.* at 7.

¶ 14 At the close of Baker's testimony, the Commonwealth sought to admit the DVD as a prior consistent statement in rebuttal, at which point Baker's counsel objected, arguing that the evidence it contained was cumulative. *Id.* at 148. Following a side bar discussion held off the record, Dr. Taroli was recalled to the stand, and the Commonwealth moved for admission of the DVD after Dr. Taroli identified it. *Id.* at 150. After resolving foundation and chain of custody issues, the trial court indicated that it would allow the Commonwealth to play the DVD. *Id.* at

172. When the Commonwealth moved to admit the DVD, Baker renewed an objection based on chain of custody. *Id.* at 177. The trial court overruled the objection. *Id.*

¶ 15 During the playing of the DVD, Baker moved to strike and asked for a cautionary instruction, arguing that J.B.'s statements to Dr. Taroli pertaining to statements E.B. made to J.B. constituted hearsay within hearsay. *Id.* at 179. The trial court immediately instructed the jury that J.B.'s statements regarding anything said to her by E.B. would be stricken and that the jury should not consider those statements in its decision. *Id.* at 179. Baker made subsequent objections on hearsay grounds, and each objection was sustained by the trial court, which then reminded the jury that it must not consider J.B.'s recollections of E.B.'s statements to her. *Id.* at 180–181.

¶ 16 Thus it is clear from the record that the DVD was admitted on rebuttal as a prior consistent statement, not as an exception to the hearsay rule pursuant to Section 5985.1.[9] Baker argues that the evidence should not have been admitted as a prior consistent statement. Appellant's brief at 27–28. We disagree.

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, "questions concerning the admissibility of evidence lie within the sound discretion of the trial court,

---

9. As such, it is not necessary to address Baker's contention that the trial court erred in admitting the DVD pursuant to Section 5985.1. See Appellant's brief at 26 (wherein she concedes that the evidence concerning the aggravated and simple assault charges might have been admissible under Section 5985.1, but renews her allegation that the evidence as it related to the endangering the welfare of children charges was not admissible under that Section.)

On appeal, Baker also renews her claim that J.B.'s statements regarding what E.B. had told her were inadmissible as hearsay within hearsay. As we noted above, however, the trial court granted Baker's objections on these grounds, striking the statement and instructing the jury to disregard them. N.T. 11/20/06 at 179–181.

and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel,* 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). An abuse of discretion requires:

> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer,* 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

*Commonwealth v. Hunzer,* 868 A.2d 498, (Pa.Super.2005). Here, we find no abuse of discretion on the part of the trial court.

■ ¶ 17 Pertinent to the argument before us, Pennsylvania Rule of Evidence 613(c) permits the admission of evidence of a prior consistent statement for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, the statement is offered to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory, and the statement was made before the fabrication, bias, etc. Pa.R.E. 613(c)(1); Pa.R.E. 613 Comment.[10]

> [P]rior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as

having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

*Hunzer,* 868 A.2d at 512 (citing *Commonwealth v. Willis,* 380 Pa.Super. 555, 552 A.2d 682, 691–692 (1988)).[11]

¶ 18 Here, during the cross-examination of seven year old J.B., she was asked questions which the prosecution believed suggested that J.B. had been induced to fabricate her testimony. They included the following exchange:

Q.: . . . Now, honey, you talked to a lot of people about this, right?

A. Huh-uh.

Q. You talked to this lady here at the table?

A. Yes.

Q. What's her name?

A. Michelle.

Q. You know Michelle by name, right?

A. Yes.

Q. Did you talk to the gentleman sitting next to Michelle?

A. Yes.

---

**10.** Pertinent to the case at hand, Rule 613(c)(1) specifically states:

> (c) Evidence of prior consistent statement of witness. Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:

(1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose.

Pa.R.E. 613(c)(1).

**11.** Therein, the Commonwealth utilized a victim's prior consistent statements to rebut an inference of recent fabrication arising during cross-examination. *Hunzer,* 868 A.2d at 513.

Q. What's his name?

A. Bob.

Q. Very good. That's Bob. The—did you talk to the guy sitting next to Bob?

A. No.

Q. You never talked to him?

A. Yeah.

Q. You talked—what's his name? Do you know?

A. P.J.

Q. You talked to—you know these people by their first name, right?

A. Yes.

Q. You talked to them a lot, didn't you?

A. Yeah.

Q. Okay. They told you why you were coming here today?

A. Yes.

Q. You talked to your mom about why you were coming here today, right?

A. Yeah.

N.T. 11/14/06 at 51–52. Later, J.B. was asked "[Jennifer] told you what to say here today, right?" and "[d]id she tell you—review with you what you were going to testify to?" *Id.* at 53. The prosecutor indicated to the trial judge that she believed the defense had insinuated that J.D.'s testimony was fabricated by contact with the prosecution team and her mother, making it appropriate to play the DVD of J.D.'s interview with Dr. Taroli as a prior consistent statement. *Id.* at 72. The trial judge responded "I think that will be appropriate." *Id.* We agree that the defense counsel's questions at the very least insinuated that J.D. had been improperly induced to fabricate her testimony by the prosecution and her mother, and as such, her December 29, 2005 statements recorded on the DVD, consistent with the "fabri-

cated" November 2006 testimony, were properly admitted to corroborate that testimony. Pa.R.E. 613(c)(1); *Hunzer, supra.*

◼ ¶ 19 Baker next asks us to determine "whether the Trial Court erred in failing to instruct the jury on prior inconsistent statements of J.B." Appellant's brief at 30. Baker prefaces this claim with the correct statements that a jury charge must be read as a whole, that the trial court has broad discretion in phrasing instructions, so long as they accurately set forth the applicable law. *Id.* at 30–31.

¶ 20 Turning to the specifics of her case, Baker asserts that "[p]rior to deliberation, the Defendant requested that the Trial Court instruct the jury on the prior inconsistent statements of J.B. that were brought out during trial," and that the trial court "refrained from giving the instruction." *Id.* at 31.[12] Baker indicates that her counsel then "renewed the request." *Id. (citing* N.T. 11/21/06 at 29). A review of the cited portion of the transcript reveals an exchange between Baker's counsel and the trial judge, after the trial judge had finished instructing the jury and inquired of counsel if there was "anything else." N.T. 11/21/06 at 28. Baker's counsel responded:

Judge, just to preserve it for the record, we would request a jury instruction on voluntariness of statement that was submitted to—that was the standard jury instruction 3.04C. Also, Judge, this morning we had requested an instruction on prior inconsistent statements of substantive offenses that the Court has already ruled on.

*Id.* at 28–29.[13] Thus Baker has shown that the trial judge was alerted to her desire

---

**12.** Baker does not cite to the record location containing an instruction request, nor does she specifically identify the statements of J.B. or their transcript location.

**13.** We realize that Baker's brief only cites to page 29 of the transcript, but as that page

for the jury instruction in question, but nowhere does she assert that she lodged a specific objection or exception to the instruction that was, in fact, given.

¶ 21 Baker's failure to object to the instruction is fatal to her claim that the trial court erred in its charge to the jury. As the Pennsylvania Supreme Court held in *Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220 (2005):

> under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

*Id.*, 584 Pa. at 632, 887 A.2d at 225.

■■■ ¶ 22 Even if a specific objection was lodged, this claim still fails. In deciding this appellate challenge, we note that "[t]he relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case." *Commonwealth v. Boyle*, 733 A.2d 633, 639 (Pa.Super.1999) *(citing Commonwealth v. Mays*, 450 Pa.Super. 188, 675 A.2d 724, 729, *appeal denied*, 546 Pa. 677, 686 A.2d 1309 (1996)); *See also Commonwealth v. Spotz*, 552 Pa. 499, 517, 716 A.2d 580, 589 (1998) *(citing Commonwealth v. Browdie*, 543 Pa. 337, 671 A.2d 668, 673 (1996)) (Explaining that a particular jury instruction is only warranted when there is evidence to support such an instruction).

¶ 23 Here, however, Baker has not indicated what statement she believes required giving the instruction she requested, nor has she directed this Court to the location of such statements in the transcripts of this case. Because Baker has made no specific allegations regarding what evidence supported her request for the jury instruction in question, we have no way to determine whether that evidence did, in fact, support the instruction and make it error for the trial court to omit the instruction.

■■■ ¶ 24 We are next asked to determine "whether the Trial Court erred in failing to instruct the jury on the voluntariness of the Defendant's statements admitted at the time of trial." Appellant's brief at 33. Specifically, Baker asserts that "prior to deliberation" she requested that the trial court give Standard Jury Instruction 3.04(C). *Id.* Baker does not cite to the transcript location containing such a request, nor does she point to any other portion of the certified record evidencing that the request was made. Baker then quotes Instruction 3.04(c) in her brief, and asserts that the trial court declined to give the instruction and that she "took exception." *Id.* Baker fails, however, to cite to any portion of the record containing a request for the jury instruction, the trial court's ruling on it, or Baker's exception to such a ruling.

¶ 25 Despite Baker's failure to provide supporting citation, our review of the pages of transcript cited in Baker's initial jury instruction challenge above revealed her counsel's reference to Jury Instruction 3.04C now in question. As we noted, after the trial judge gave full instructions to the jury, he inquired of counsel if there was anything else, to which Baker's counsel responded "Judge, just to preserve it for the record, we would request a jury instruction on voluntariness of statement that was submitted to—that was the stan-

begins in the middle of a sentence, we assume the absence of citation to page 28 was a

typographical omission.

dard jury instruction 3.04C." N.T. 11/21/06 at 28. Thus it appears that counsel did request Jury Instruction 3.04C,[14] but as with her prior instruction challenge, Baker has not preserved the alleged error with a specific objection to the jury instruction that was actually given. *Pressley, supra.*

¶ 26 Further, as with her initial jury instruction challenge, even if a specific objection had been lodged, Baker has failed to show that the trial court committed error in the instruction actually given, which was as follows:

> The Commonwealth has introduced evidence of a statement which it claims was made by the Defendant. Before you may consider the statement as evidence against the Defendant you must find a crime was, in fact, committed and the Defendant, in fact, made the statement and that the statement was voluntary. Otherwise you must disregard the statement.

N.T. 11/21/06 at 14. As the Pennsylvania Supreme Court has made clear:

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones,* 954 A.2d 1194, 1198 (Pa.Super.2008) (citing Einhorn, supra). Additionally, the Pennsylvania Superior Court has explained that:

> "[I] n reviewing a challenge to the trial court's refusal to give a specific jury

instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision." In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Brown,* 911 A.2d 576, 582–583 (Pa.Super.2006) (citing *Commonwealth v. Thomas,* 904 A.2d 964, 970 (Pa.Super.2006)). In the instant case, the record clearly supports the jury instruction given.

¶ 27 Baker next asserts that "the Trial Court erred in failing to merge the sentence received by the Defendant." Appellant's brief at 34. Specifically, Baker contends that for sentencing purposes, her conviction for endangering the welfare of E.B. should have merged with her conviction for the aggravated assault of E.B. because both charges were based on the same two factual predicates—(1) that Baker broke E.B.'s arm then intentionally

---

**14.** It is unclear from counsel's statement whether this was the initial request for Jury Instruction 3.04C, or a renewal of a previous request.

failed to seek medical attention for the injury, and (2) that Baker engaged in a course of conduct where she deprived E.B. of food, water and medical care. Appellant's brief at 41. In other words, Baker asserts that the convictions must merge for sentencing purposes because they arose from the same criminal acts. The Commonwealth concedes that the convictions arose from the same set of facts, but insists that merger is nonetheless unnecessary. Commonwealth's brief at 23.

¶ 28 The concept of merger has been a somewhat contentious one. In 2002, the Pennsylvania Legislature enacted Section 9765 of the Judicial Code, which directs that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Despite the enactment of Section 9765, the doctrine of merger remained a thorny issue.

¶ 29 In *Commonwealth v. Jones*, 590 Pa. 356, 912 A.2d 815 (2006), a case involving a criminal act which predated the effective date of Section 9765, the Pennsylvania Supreme Court was asked to determine whether it was error to sentence the appellant to consecutive sentences for burglary and criminal trespass where one act was involved and the same facts established nearly identical elements for both crimes. *Id.*, 590 Pa. at 358, 912 A.2d at 816. In addressing this question, *Jones* discusses the interplay between double jeopardy principles, Supreme Court case law, and Section 9765.[15] In authoring the lead opinion, Justice Castille adopted a "practical, hybrid approach" that requires courts to "evaluate the statutory elements [of each crime], with an eye to the specific allegations leveled in the case." *Id.*, 590 Pa. at 367, 912 A.2d at 822. Justices Cappy and Baer joined Justice Castille's lead opinion. Justice Newman, joined by Justice Eakin, wrote a dissent favoring the adoption of a "statutory elements" test in accordance with Section 9765. *Id.*, 590 Pa. at 374, 912 A.2d at 826. Justice Saylor generally agreed with Justice Newman's dissenting opinion as to the "statutory elements" test, but concurred in the result of the lead opinion because the criminal act at issue pre-dated the effective date of § 9765. *Id.*, 590 Pa. at 372, 912 A.2d at 825.

¶ 30 More than a year after *Jones* was decided, a panel of this Court was asked to address a merger claim in *Commonwealth v. Williams*, 920 A.2d 887, 888 (Pa.Super.2007), a case involving a crime which occurred after the effective date of Section 9765. Citing *Jones* as the Pennsylvania Supreme Court's most recent pronouncement on the subject, *Williams* acknowledged that *Jones* generated a "lead opinion" approach to merger and a "dissenting opinion" approach to merger, but pointed out that neither approach garnered the votes of more than half of the Justices with respect to acts arising after the effective date of Section 9765, rendering each approach a non-binding plurality. *Id.*, 920 A.2d at 891. *Williams* then adopted the approach taken by Justice Newman's dissenting opinion, indicating

---

**15.** With regard to Section 9765, the plurality opinion maintained that "this Court's merger jurisprudence is not rendered irrelevant by Section 9765, for it is silent as to whether the facts of a case are pertinent to merger analysis, see discussion infra, and our jurisprudence in these cases implicate constitutional double jeopardy concerns." *Jones*, 590 Pa. at 363, 912 A.2d at 819 n. 6.

that it "reflects and gives proper deference to § 9765, a statute that has not been ruled unconstitutional by our Supreme Court," and "more accurately reflects this Court's jurisprudence on merger." *Id.*

¶ 31 *Williams* was shortly thereafter followed by the Superior Court in *Commonwealth v. Martz*, 926 A.2d 514, 526 (Pa.Super.2007) ("Applying the approach in *Jones* espoused by the dissent and adopted by this Court in *Williams*, we need to assess whether the charges arose out of a single set of facts *and* whether *all* the statutory elements of one offense coincide with the statutory elements of the other offense.") and *Commonwealth v. Pitner*, 928 A.2d 1104, 1111 (Pa.Super.2007) (citing *Williams* for the proposition that "[c]rimes do not merge unless they arise from a single criminal act and all the statutory elements of one offense are included in the elements of the other.").

¶ 32 *Williams* was again recently followed by a panel of this Court in *Commonwealth v. Ede*, 949 A.2d 926 (Pa.Super.2008). In doing so, the Court acknowledged the Supreme Court's failure to definitively state which merger analysis applies for criminal acts occurring after the enactment of Section 9765, and explained its reliance on *Williams* as follows:

> Unless our Supreme Court or an *en banc* panel of this Court overrules *Williams*, we are bound by that panel's adoption of the strict approach. *Commonwealth v. Smith*, 772 A.2d 75, 78 (Pa.Super.2001) *(en banc), rev'd on other grounds*, 570 Pa. 34, 807 A.2d 890 (2002). *See also Commonwealth v. Martz*, 926

A.2d 514, 526 (Pa.Super.2007) (adopting *Williams* approach to merger analysis). Accordingly, we rely on the element-based approach of Section 9765....

*Ede*, 949 A.2d at 933.

¶ 33 Since the criminal acts in question here occurred after the effective date of Section 9765, we follow *Williams, Pitner, Martz,* and *Ede,* and turn to a determination of "whether the charges arose out of a single set of facts and whether all the statutory elements of one offense coincide with the statutory elements of the other offense." *Ede,* 949 A.2d at 933 *(citing Martz,* 926 A.2d at 526). We first note that both parties agree that the charges for aggravated assault and for endangering the welfare of a child arose from the same set of facts. Appellant's brief at 42; Commonwealth's brief at 23. The question then becomes whether all the statutory elements of one offense coincide with the elements of the other offense.[16] As even Baker herself acknowledges, they do not. 18 Pa.C.S. § 2702(a)(1); 18 Pa.C.S. § 4304; Appellant's brief at 42. As such, the crimes do not merge for sentencing purposes, and Baker is entitled to no relief on this allegation. 42 Pa.C.S. § 9765.

■ ¶ 34 Baker's last allegation of error challenges discretionary aspects of the sentence she received for the aggravated assault of E.B. Appellant's brief at 44. Specifically, she asserts that we should vacate her sentence pursuant to 42 Pa. C.S.A. § 9781(c)(3), which directs this Court to vacate a sentence and remand the matter if we find that the sentencing court

**16.** A person is guilty of aggravated assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). On the other hand, a person is guilty of endangering the welfare of a child if he or she, as a parent, guardian, or other person supervising the child's welfare, "knowingly endangers the welfare of the child by violating a duty of care, protection, or support." 18 Pa.C.S. § 4304.

sentenced outside the sentencing guidelines and the sentence is unreasonable.[17] This type of challenge to the discretionary aspects of a sentence is considered a petition for permission to appeal because the right to pursue such a claim is not absolute. *Commonwealth v. McAfee,* 849 A.2d 270, 274 (Pa.Super.2004). A petitioner raising the claim must set forth in his or her appellate brief a concise statement of the reasons relied upon for allowance of appeal. Pa.R.A.P. 2119(f). In addition, the petitioner must demonstrate that a substantial question exists as to whether the sentence imposed is inappropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b). This Court has concluded that a substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Bullock,* 868 A.2d 516, 528 (Pa.Super.2005), *aff'd,* 590 Pa. 480, 913 A.2d 207 (Pa.2006), *cert. denied,* —— U.S.

——, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007) (citations omitted).

¶ 35 Baker has included in her brief the required Rule 2119 statement, reiterating her post-sentence allegation that the trial court did not state adequate reasons on the record as to why her minimum sentence exceeded the sentencing guidelines.[18] While this issue raises a substantial question permitting our review, *Commonwealth v. Eline,* 940 A.2d 421, 435 (Pa.Super.2007) *(citing Commonwealth v. Reyes,* 853 A.2d 1052, 1055 (Pa.Super.2004)), we find the issue to be meritless.

¶ 36 Baker was sentenced on February 20, 2007 to 66 months (five years and six months) to eleven years imprisonment for felony 1 aggravated assault. 18 Pa.C.S.A. § 2702(a)(1). As she herself concedes, the applicable statutory maximum sentence is 20 years imprisonment, 18 Pa.C.S.A. § 1103(1), thus the minimum sentence imposed could not exceed 10 years imprisonment (one half of the applicable maximum sentence). 42 Pa.C.S.A. § 9718. Baker also concedes that because E.B. was under the age of thirteen at the time, a mandato-

---

**17.** Section 9781, applying to appellate review of sentence, directs as follows:
(a) RIGHT TO APPEAL.—The defendant or the Commonwealth may appeal as of right the legality of the sentence.
(b) ALLOWANCE OF APPEAL.—The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter.
(c) DETERMINATION ON APPEAL.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable. In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
42 Pa.C.S. § 9781.

**18.** Baker filed post-sentence motions alleging, *inter alia,* that the trial court failed to set forth on the record a justification for imposing a minimum sentence which exceeded the aggravated range of sentence under the sentencing guidelines. Post–Sentence Motions filed 3/12/07; Memorandum in Support filed 4/1/07.

ry minimum sentence of 5 years applies. 42 Pa.C.S.A. § 9718.

¶ 37 With regard to the guideline ranges, Baker asserts that "the proposed standard range is '22–36' months with an aggravated range sentence of '48' months." *Id.* at 43. *(citing* 204 Pa.Code § 303.18).[19] Baker's claim assumes that her offense gravity score is 10. *Id.* Pursuant to Section 303.16, if a defendant with a prior record score of 0 is convicted of an offense with a gravity score of 10, the applicable standard range sentence is 22 to 36 months. The applicable aggravated range is + 12 months, resulting in an aggravated range of 48 months.

¶ 38 The Commonwealth points out, however, that the applicable offense gravity score is 11, not 10. Commonwealth brief at 25–26. When the correct offense gravity score is used, the Commonwealth asserts, it is clear that Baker's sentence is within the guideline range. We agree.

¶ 39 Chapter 303.15 of the Pennsylvania Sentencing Guidelines confirms that the offense of aggravated assault (causes serious bodily injury) pursuant to 18 Pa.C.S. § 2702(a)(1) carries an offense gravity score of 11, not 10. 204 Pa.Code § 303.15. An offense gravity score of 10 is applicable for the offense of aggravated assault (**attempts** to cause serious bodily injury) (emphasis added). 204 Pa.Code § 303.15. Here, Baker does not dispute that the evidence was sufficient to show that she, in fact, **caused** serious bodily injury to E.B., therefore the correct offense gravity score is 11.

¶ 40 Pursuant to Section 303.16, if a defendant with a prior record score of 0 is convicted of an offense with a gravity score of 11, the applicable standard range sen-

tence is 36 to 54 months. The applicable aggravated range is + 12 months, resulting in an aggravated range of 66 months. Thus Baker's minimum sentence is within the guideline range. As such, Baker has failed to prove her allegation that her sentence must be remanded pursuant to 42 Pa.C.S.A. § 9781(c)(3) on the grounds that the trial court sentenced outside the sentencing guidelines and the sentence is unreasonable.

¶ 41 For the foregoing reasons, we affirm the judgment of sentence.

¶ 42 Affirmed.

---

**19.** We note that Section 303.18 is the sentencing matrix applicable when a deadly weapon has been used. Section 303.16 is the basis sentencing matrix which would have been used to calculate Baker's sentence.