J-S22026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARMANI RHEDRICK | : | |
| | : | |
| Appellant | : | No. 2463 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 13, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0000079-2020

BEFORE:    BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JANUARY 18, 2023**

Armani Rhedrick (Appellant) appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury conviction of first degree murder[1] and related offenses.  Appellant raises three evidentiary claims, averring the trial court erred in admitting: (1) the testimony of a child witness, where her competency examination was allegedly deficient; (2) prior inconsistent hearsay[2] statements contained in a 911 call, where the 911 caller had testified earlier at trial but was not confronted with those statements; and (3) a witness' prior consistent statements,[3] as testified

---

[1] 18 Pa.C.S. § 2502(a).

[2] **See** Pa.R.E. 803.1(1) (Prior Inconsistent Statement of Declarant-Witness).

[3] **See** Pa.R.E. 613(c) (Witness's Prior Consistent Statement to Rehabilitate).

to by another witness at trial. We agree with the trial court the first two claims are waived and no relief is due on the third. Accordingly, we affirm.

## I. Facts & Procedural History

We glean the following facts from the trial court's opinion and the trial notes of testimony. The victim Otis Harris (Victim), his sister Tahisha McKay (Sister), and his nephew Rayshown McKay (Nephew), lived in Pottstown, Montgomery County, across the street from Appellant. The Victim's girlfriend, Grace Kennon (Girlfriend), lived two doors away from Appellant. N.T. Trial by Jury Day 2, 10/12/21, at 211. In September of 2019, Nephew "heard Appellant say something bad about him, and decided he would fight him the following day." Trial Ct. Op., 1/12/22, at 2, *citing* N.T. Jury Day 1, 10/11/21, at 104-05.

The next day, September 23, 2019, around 8:00 a.m., Nephew went to Appellant's house, "alone and with no weapons." Trial Ct. Op. at 2, *citing* N.T., 10/11/21, at 105-06, 117.

> When Appellant answered the door, [Nephew] "started swinging" and punching Appellant. The fight continued in Appellant's living room. [Nephew] heard Appellant say, "[G]o get the gun." At that point, [Nephew] took off and ran back to his house [to retrieve his own gun].

Trial Ct. Op. at 2, *citing* N.T., 10/11/21, at 106-08.

Nephew told his uncle, the Victim, what happened, then went upstairs to clean the blood on his face. Trial Ct. Op. at 2. Meanwhile, the Victim went outside. *Id.* Nephew then heard gunshots in front of the house. *Id.* at 2-3

The Victim's girlfriend, who was at her home across the street, also heard gunshots and immediately ran to the Victim outside. N.T. Trial by Jury Day 2, 10/12/21, at 213-14. She did not see any weapons on the ground next to him. *Id.* at 214. The Victim died at the scene and Appellant was arrested the following day. Appellant was charged with, *inter alia*, first degree murder and weapons offenses.

A three-day jury trial commenced on October 11, 2021. The trial court noted Nephew had tried "to limit his involvement in the ensuing investigation" and "was a reluctant witness[.]" Trial Ct. Op. at 26. For example, Nephew was interviewed by Detective John Wittenberger, of the Montgomery County District Attorney Office's homicide unit, but refused to give a written statement. *Id.* Nevertheless, at trial, Nephew testified consistently with the above summation of facts. *See* N.T., 10/11/21, at 105-10. The Commonwealth presented the testimony of, *inter alia*, Girlfriend, Sister, investigating detectives, and a child witness, I.S. The Commonwealth also read aloud the statement Appellant made to Detective Wittenberger. N.T., 10/12/21, at 135-46.

Appellant claimed self-defense[4] and testified to the following. He was at home with his girlfriend and their three-week old daughter. *See* N.T.,

_____

[4] *See* N.T. 10/11/21, at 33 (Appellant's opening argument). The trial court instructed the jury on self defense. N.T. Trial by Jury Day 3, 10/13/21, at 128-31.

- 3 -

10/13/21, at 50, 52. Both the Victim and Nephew were at his door, and Nephew had a gun in his hand. *Id.* at 52. The two men forced their way in and both started attacking him and said they were going to kill him.[5] *Id.* at 53. Appellant retrieved his shotgun from the closet, while Nephew pointed his gun and "started to pull the trigger," but "it wasn't working." *Id.* When they saw Appellant's gun, however, the two men said, "Fuck it, we gonna get him next time," and Appellant "chased them out[side.]" *Id.* Nephew got away, but Appellant told the Victim to stop and turn around. *Id.* Appellant told the Victim he would call the police, but as he was retrieving his phone from his pocket, the Victim pointed a gun at Appellant. *Id.* Appellant thus fired his shotgun at the Victim. *Id.* Appellant believed that Nephew would be "getting more people with guns" and thus Appellant, his girlfriend, and their infant fled. *Id.* at 53-54. Appellant was arrested the following day.

The jury found Appellant guilty of first degree murder, possession of an instrument of crime, possession of a weapon, and tampering with evidence.[6]

---

[5] The statement Appellant gave to Detective Wittenberger — which was read aloud at trial — stated that only the Victim punched him, while Nephew, who had "the outline of a gun [visible] on his waist," held the screen door open. N.T., 10/12/21, at 138.

[6] 18 Pa.C.S. §§ 907(a)-(b), 4910(1).

With Appellant's agreement, the trial court proceeded immediately to sentencing and imposed an aggregate term of life imprisonment.[7]

Appellant filed a timely post-sentence motion, which was denied. He then timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## II. Questions Presented & Relevant Standard of Review

Appellant presents three issues for our review:

I. Did the [trial] court err in permitting Commonwealth witness [I.S.] to testify where the competency examination of the witness failed to explore whether the witness understood the nature of her oath and the conscious duty to speak the truth that it imposed?

II. Did the [trial] court err in permitting, during the testimony of Det. John Wittenberger, the admission of hearsay statements of [Nephew] contained in a 911 call when [Nephew] had not been confronted with the statements while he was testifying?

III. Did the [trial] court err in permitting, during the testimony of [Girlfriend], the admission of hearsay statements of [Nephew] describing the events preceding the shooting and what occurred on the day of the shooting?

Appellant's Brief at 3.

We first note the relevant standard of review:

"[Q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not

---

[7] The certified electronic record transmitted on appeal does not include a written sentencing order. The October 13, 2021, notes of testimony indicate the trial court imposed the following sentences: a life sentence for first degree murder, and concurrent terms of two years' probation for each of his remaining convictions. N.T., 10/13/21, at 255.

reverse the court's decision on such a question absent a clear abuse of discretion."

***Commonwealth v. Baker***, 963 A.2d 495, 503-04 (Pa. Super. 2008) (citation omitted).

### III. Competency Hearing for Child Witness

Appellant's first issue is a challenge to the competency examination of eight-year old I.S., whom the Commonwealth called as an eyewitness.[8]  For ease of review, we first summarize the following:   this competency examination was conducted on the second day of trial.  N.T., 10/12/21, at 5-9.  The trial court asked I.S., *inter alia*, whether she knew the difference between the truth and a lie, and I.S. replied she did, and furthermore that a lie is "[a] bad thing."  ***Id.*** at 7.  In response to the court's questions, I.S. stated she would not "make anything up" and would testify about what she remembered, saw, and heard.  ***Id.*** at 8.  The court then asked the Commonwealth and Appellant's attorney if they had any questions for I.S. "about telling the truth" and competency matters, but both responded in the negative.  ***Id.*** at 9.  Additionally, Appellant did not raise any objection during the competency examination.  ***See id.*** at 5-9.  The trial court found I.S. was competent to testify.  ***Id.*** at 9.

---

[8] I.S. testified on direct examination that on the day of the shooting, she was six years old.  N.T., 10/12/21, at 36.  She was standing outside her house and saw a "grown up" "boy" holding a gun and then shooting someone.  ***Id.*** at 37-38.  I.S. stated the person who was shot did not have a gun.  ***Id.*** at 39.

Appellant challenges the competency examination for the first time in his Rule 1925(b) statement. On appeal, he avers the trial court erred in allowing I.S. to testify because the court "failed to explore whether [she] understood the nature of her oath and the conscious duty to speak the truth[.]" Appellant's Brief at 11. Appellant argues that in **Commonwealth v. Rimmel**, 289 A.2d 116 (Pa. Super. 1972), the children "at least indicated that they would be 'beaten' or 'hollered at' for violating an oath to tell the truth,"[9] but here, I.S.'s "examination completely failed to elicit any indicia that [she] understood the solemnity of her oath to tell the truth or the consequences of violating it." Appellant's Brief at 14.

Both the trial court and the Commonwealth suggest Appellant has waived this issue for appellate review by failing to raise it before the trial court. Trial Ct. Op. at 15; Commonwealth's Brief at 15. We agree. Because no challenge was preserved before the trial court, this issue is waived for appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and

_____

[9] We note the context in which these facts were considered in **Rimmel**: one eight-year old child witness replied, "No," to the trial court's question, "Do you know it is wrong to tell a lie?" **Rimmel**, 289 at 117 n.2. However, the child then replied, "Yes," to the question of whether she tried "to tell the truth all the time[.]" **Id.** On appeal, this Court: (1) first reasoned neither of the two eight-year old child witnesses was examined on whether they comprehended the difference between truth and falsehood; and thus (2) concluded the children's statements, that they may be "beaten" "hollered at," or "punished" if they tell a lie, were "not sufficient indication of a comprehension of the solemnity of the oath" to testify. **Id.** at 118.

cannot be raised for the first time on appeal."); ***Commonwealth v. Rosser***, 135 A.3d 1077, 1086 (Pa. Super. 2016) (*en banc*) ("One must object to errors, improprieties or irregularities at the earliest possible stage of the criminal . . . adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.").

**IV. Hearsay/Prior Inconsistent Statement:**

**Admission of Nephew's 911 Call**

In his second issue, Appellant raises a hearsay challenge to the admission of Nephew's alleged 911 call. Before reviewing his arguments, we first set forth the following context. On the first day of trial, Nephew denied that he or his aunt (the Victim's sister) called 911. N.T., 10/11/21, at 111. Sister, however, testified that Nephew did call 911. ***Id.*** at 151-52.

On the second day of trial, Detective Wittenberger testified he reviewed several 911 calls that were made regarding the shooting. N.T., 10/12/21, at 99. When the Commonwealth asked the detective whether Nephew was the voice of one 911 caller, Appellant objected, stating merely, "[b]est evidence."[10] ***Id.*** at 100. The trial court overruled the objection. ***Id.*** The

---

[10] The "best evidence rule," codified at Pa.R.E. 1002, provides: "An original . . . recording . . . is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002.

Commonwealth then played a recording of a 911 call, allegedly made by Nephew, with a jury instruction that the jury could consider whether the caller's voice belonged to Nephew, who had testified earlier. *See id.* at 101-02.

On appeal, Appellant now raises a Pa.R.E. 803.1. prior inconsistent statement-hearsay[11] challenge to the 911 call recording. He points out the Commonwealth had not confronted Nephew with the 911 call recording during his earlier testimony, and thus Appellant asserts, he was unable to cross-examine Nephew about his prior inconsistent statement, in contravention of Rule 803.1. Appellant's Brief at 17.

---

[11] While Appellant refers to Pennsylvania Rule of Evidence "80**1**.1," the prior-inconsistent exception appears at Rule 80**3**.1(1). *See* Appellant's Brief at 15-16. This rule provides, in pertinent part:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> (1) . . . A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:
>
> > (A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;
> >
> > (B) is a writing signed and adopted by the declarant; or
> >
> > (C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1(1)(A)-(C).

We agree with the trial court that Appellant has likewise waived this discrete evidentiary claim for failure to raise it during trial. *See* Pa.R.A.P. 302(a); Trial Ct. Op. at 19. In lodging his objection at trial, Appellant merely stated, "[b]est evidence."[12] N.T., 10/12/21, at 100. On appeal he presents a different theory — hearsay. Thus, this issue is waived for appellate review. *See Rosser*, 135 A.3d at 1086 ("Where the trial court denies relief on one theory, a defendant may not attain appellate relief on a new theory for that same relief."); *Commonwealth v. Ryan*, 909 A.2d 839, 845 (Pa. Super. 2006) ("A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief.") (citation omitted).

### V. Prior Consistent Statement: Admission of
### Girlfriend's Testimony About Nephew's Statements

In his final issue on appeal, Appellant argues the trial court erred in admitting hearsay evidence, namely Girlfriend's testimony about a prior consistent statement — what Nephew told her in the days following the shooting. Appellant's Brief at 18. For ease of review, we first summarize a portion of **Nephew's** direct examination, where he stated all of the following:

---

[12] The Commonwealth also points out that following the trial court's overruling of Appellant's "best evidence" objection, the Commonwealth read into the record a stipulation between the parties, "that this particular 9-1-1 call . . . is authentic and **it's admissible**." Commonwealth Brief at 20 (emphasis added), *citing* N.T., 10/12/21, at 100-01.

the day before the shooting, he overheard Appellant talking about him negatively. N.T., 10/11/21, at 105. The next morning, Nephew went to Appellant's house, alone, with the intention "[t]o fight." *Id.* at 104-05. Nephew did not have any weapon on him. *Id.* at 106. When Appellant opened the door, Nephew started punching him. *Id.* Nephew did not see anyone else there, but when Appellant said, "Go get the gun," Nephew ran back to his house, in order to get his own gun. *Id.* at 107-08. Nephew told his uncle, the Victim, what happened, and then went upstairs to clean his face. *Id.* at 109. Meanwhile, the Victim went outside, and Nephew heard gunshots. *Id.* at 110.

Pertinently, the Commonwealth asked Nephew whether he talked to the Victim's girlfriend in the days following the shooting. N.T., 10/11/21, at 114. Nephew replied, "Yes." *Id.* The Commonwealth did not ask him specifically what was said, but the following exchange immediately occurred:

> [Commonwealth:] And did you tell [Girlfriend] what you just told us?
>
> [Nephew:] Yes.

*Id.*

Next, we review Girlfriend's direct examination trial testimony. The Commonwealth asked Girlfriend what Nephew told her in the days following the shooting. N.T., 10/12/21, at 215-16. The trial court sustained Appellant's objection, which had not cited any grounds. *Id.* The Commonwealth then argued Girlfriend's anticipated response would be admissible as Nephew's

prior consistent statement under Pa.R.E. 613. *Id.* Following a sidebar discussion, which was not transcribed, the trial court agreed and permitted the testimony. The court also instructed the jury that Nephew's out-of-court statement, as will be testified to by Girlfriend, could not be considered for the truth of the matter asserted, but only for determining Nephew's credibility. *Id.* at 216-17.

Girlfriend then testified that Nephew told her all the following: on the night before the shooting, he, the Victim, and Appellant were "hanging out on the porch," and Nephew and Appellant had a physical altercation. N.T., 10/12/21, at 218. Appellant went home, but "over time, [Nephew] decided he was going to go to his house." *Id.* The next morning, Appellant opened his door, Nephew hit him, and the two fought. *Id.* Nephew heard Appellant tell his girlfriend to get his gun and Nephew left, went home, and woke up the Victim. *Id.* The Victim went outside, and "that's when [Nephew] heard the shots." *Id.*

On appeal, Appellant argues the trial court erred in permitting Girlfriend to give the above testimony. Appellant points out: (1) in Nephew's direct examination, he was asked whether he spoke with Girlfriend after the shooting; but (2) although Nephew responded in the affirmative, he was not "confronted" with what he told Girlfriend specifically. Appellant's Brief at 19. Thus, Appellant alleges, in contravention of Rule 613(c), he was "deprived [of] the opportunity to cross-examine [Nephew] regarding those statements." *Id.*

Finally, Appellant asserts he was prejudiced, as Girlfriend's testimony strongly corroborated "the version of events" testified to by Nephew at trial, which alone would have been "tenuous since it contradicted his earlier statements to police . . . and before a Grand Jury." *Id.* at 20. We conclude no relief is due.

As stated above, we review the trial court's admission of evidence for an abuse of discretion. *Baker*, 963 A.2d at 503-04. Rule 613(c) states:

> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> > (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
> >
> > (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c)(1)-(2).

This Court has explained:

> [Rule] 613(c) permits the admission of evidence of a prior consistent statement for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, the statement is offered to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory, and the statement was made before the fabrication, bias, etc. Pa.R.E. 613(c)(1) [&] Comment.

*Baker*, 963 A.2d at 504 (some citations & footnote omitted). "As a general rule, a prior consistent statement is hearsay, and its admissibility is dependent

upon an allegation of corrupt motive or recent fabrication. Additionally, such statements have been admitted in response to an allegation of faulty memory." ***Commonwealth v. Handfield***, 34 A.3d 187, 208 (Pa. Super. 2011) (citation omitted).

In its opinion, the trial court found the evidence — Girlfriend's testimony about what Nephew told her — was admissible as Nephew's prior consistent statement under Rule 613(c). Trial Ct. Op. at 22. The trial court recounted that Nephew was reluctant to cooperate with the investigating authorities and gave "differing accounts of what happened that day," as he "was worried about getting in trouble[.]" ***Id.*** at 26-27. The court summarized: (1) "[s]hortly after the murder, [Nephew] was interviewed by Detective Wittenberger, but he refused to give a written statement[;]" (2) Nephew was served with a subpoena to testify before a grand jury, but failed to appear; (3) law enforcement in Rochester, New York, where Nephew "had been staying[,] had to return him to Pennsylvania to testify[;]" (4) Nephew was subsequently "given immunity" but omitted two facts from his grand jury testimony — that he knocked on Appellant's door and started a fight and that he had a gun at his house; and (5) a few weeks before trial, Nephew sent Detective Wittenberger a text message, which stated "he had not been truthful[.]" ***Id.*** at 26-27.

The trial court also considered that on cross-examination, Appellant's counsel "vigorously questioned" Nephew in an "attempt to discredit his trial

testimony." Trial Ct. Op. at 27. In their questioning, counsel repeatedly asked or stated that the Victim was with Nephew at Appellant's house, and that the Victim and Nephew were both armed. *Id.* at 27-29. Nephew, however, repeatedly disagreed with these statements. *Id.*

The trial court concluded that Girlfriend's testimony, about what Nephew told her, was properly admitted under Rule 613(c)(1) as a prior consistent statement in response to the above cross-examination of Nephew. Trial Ct. Op. at 29. The court reasoned Girlfriend's testimony "was used to rehabilitate [Nephew's] trial testimony" by showing that shortly after the shooting, he had made consistent statements (consistent with his trial testimony) to Girlfriend. *Id.*

On appeal, Appellant does not address, let alone dispute, any of this extensive discussion by the trial court. Instead, Appellant's argument, briefly presented, is that because Nephew "was never confronted with his statements to" Girlfriend, he was denied the opportunity to cross-examine Nephew about those statements. Appellant's Brief at 19. Appellant ignores, however, the Commonwealth did explore particularly what Nephew told Girlfriend, albeit briefly; the Commonwealth asked Nephew whether the trial testimony he just gave was consistent with what he told Girlfriend shortly after the shooting. *See* N.T., 10/11/21, at 114. Nephew responded in the affirmative. *Id.* Furthermore, as noted above, Appellant does not dispute that he "vigorously"

cross-examined Nephew in an effort to discredit his trial testimony. ***See*** Trial Ct. Op. at 27.

Finally, to the extent Appellant argues he was prejudiced by the evidence because it bolstered Nephew's credibility, Appellant's Brief at 20, we remind Appellant:

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged."

***See Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007). (citation omitted). We disagree with Appellant that relief is due and determine the trial court did not abuse its discretion in permitting the testimony. ***See Baker***, 963 A.2d at 503-04.

## VI. Conclusion

In sum, we conclude Appellant's first two issues are waived for failure to preserve them before the trial court, and his third issue merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/18/2023</u>