J-S49015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN WAYNE BELL, | |
| Appellant | No. 3195 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 25, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005900-2017

BEFORE:  BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                     **FILED DECEMBER 18, 2019**

Appellant, Brian Wayne Bell, appeals from the judgment of sentence of an aggregate term of 3 to 23 months' incarceration, imposed after he was convicted of two counts of simple assault, possession of an instrument of crime (PIC), impersonating a public servant, and harassment.  On appeal, Appellant challenges the trial court's jury instruction, its ruling to preclude certain evidence, the sufficiency of the evidence to sustain his convictions, and the court's application of the deadly weapon enhancement in fashioning his sentence.  After careful review, we affirm.

The trial court summarized the facts underlying Appellant's convictions, as follows:

---

[*] Former Justice specially assigned to the Superior Court.

On July 20, 2017, [Appellant] was involved in an incident of road rage, involving Carol Santiago and her boyfriend Reynaldo Lopez. At approximately 9:30 [p.m.], both Santiago and Lopez were on their way home from the King of Prussia area to Santiago's parents' home in Norristown. When they got to the intersection at Marshall and Markley Streets in Norristown, they encountered [Appellant] on his motorcycle, driving slowly. They were both in the northbound lane of Markley Street, with [Appellant] in front. According to Ms. Santiago's testimony, she and her boyfriend were able to pass [Appellant's] motorcycle by using the merge lane off to [Appellant's] right-hand[]side. Ms. Santiago and Mr. Lopez continued northbound on Markley Street, which was now a single lane roadway.

In response, [Appellant] went to the left[-]hand side of the victims' car, riding on the line separating the northbound and southbound lanes of Markley Street. When they got to a light, Ms. Santiago looked over to her left and saw that [Appellant] was pointing a gun at them, just a few inches from their car window. The victims took off through the red light and went straight towards Ms. Santiago's parents' house. They were speeding, trying to get away from [Appellant]. [Appellant] continued to follow them on the left side of their vehicle. Even though Ms. Santiago was ducked down in the car, she was still able to see that[,] while her boyfriend was driving, [Appellant] remained on his left[-]hand side and was getting closer to the car. Every time Mr. Lopez drove right, [Appellant] drove right. If he stopped, [Appellant] stopped. They were unable to get away from [Appellant]. In fact, when the victims tried to turn down Sterigere Street on the way to Ms. Santiago's parents' house, he blocked their access. They continued onto Wood Street, which was the next street from which to access Ms. Santiago's parents' house. Ms. Santiago testified that she told her boyfriend to speed up to get around [Appellant], which is what they did. [Appellant] continued to follow them and he followed alongside them for about nine blocks, periodically pointing his gun at them, until they got to Ms. Santiago's parents' house.

After Mr. Lopez turned down Wood Street, Ms. Santiago called 911 and told them to come to 1221 Astor Street, the location of her parents' house. She stayed on the phone until the police arrived.

Once at the parents' house, Ms. Santiago got out of the car and told [Appellant], who had followed them there[,] that she was

on the phone with 911. While holding his gun face down, [Appellant] pulled out a gold badge and said that[,] "I'm one of them." Ms. Santiago took this to mean that he was a police officer, and at first got scared. She became doubtful when she saw what he was wearing and how he was acting. [Appellant] never identified himself as a private detective or as a private investigator. [Appellant] put the gun away shortly before the police arrived. While this was happening, Mr. Lopez got out of the car too and … walked towards [Appellant], arguing with him verbally. The police arrived minutes later.

Mr. Lopez also testified at trial. His testimony corroborated the series of events as testified to by Ms. Santiago. He explained they were able to pass in front of [Appellant's] motorcycle by using the merge lane. When Markley Street became one lane, [Appellant] rode his motorcycle to the left of Mr. Lopez, who was in the driver's side of the car. Mr. Lopez testified that [Appellant] was basically driving in the southbound lane of Markley Street. Mr. Lopez looked over at [Appellant], and [Appellant] was pointing a gun at him, which made him fear for his life. [Mr.] Lopez also described that while he and his girlfriend were on Markley Street, [Appellant] tried to ram his motorcycle into their car. [Mr.] Lopez had to swerve away from [Appellant] so he did not hit is car. [Appellant] pointed his gun at the victims for a "good period of time, until [they] were finally able to get away from being next to him."

Mr. Lopez also testified as to what happened once they arrived at Ms. Santiago's parents' house on Astor Street. He explained that he stopped the car right in front of the house and stayed in the car until he noticed that [Appellant] came off his motorcycle and was headed to their car. That prompted Mr. Lopez to get out of his car and he confronted [Appellant] about the situation.

Mr. Lopez told the jury that Ms. Santiago called 911, and that she had called while they were on Markley Street and stayed on the phone the entire time until they got to her parents' house. Mr. Lopez recalled that when his girlfriend told [Appellant] that she was on the phone with the police, [Appellant] said he was with the police and showed them a badge. At that moment[, Mr.] Lopez believed him. Mr. Lopez recalled that [Appellant] still had his gun in his hand when he got of[f] his motorcycle and approached their car, but that at this time he was holding it facing the ground.

- 3 -

\*\*\*

After the Commonwealth presented its evidence, the defense called two character witnesses, Brian Galie and Jackie Lawrence. In addition, [Appellant] testified on his own behalf. In general, [Appellant's] defense was that he believed himself to be in danger and that he was acting in self-defense.

At the conclusion of the trial, the jury found [Appellant] guilty of the aforementioned charges, and this [c]ourt found him guilty of the summary offense [of harassment].

Trial Court Opinion (TCO), 1/2/19, at 1-5 (citations to the record omitted).

On September 25, 2018, Appellant was sentenced to the aggregate term stated *supra*. He filed a timely post-sentence motion, which the court denied. Appellant then filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on January 2, 2019.

Herein, Appellant states four issues for our review:

1. Whether the [trial c]ourt erred in instructing the jury as to [the] use of deadly force in its justification instruction, as … Appellant did not use deadly force, so the use of force instruction was the appropriate instruction[?]

2. Whether the [trial c]ourt erred in sustaining [the] Commonwealth['s] relevance objection during … Appellant's testimony, where … Appellant was attempting to provide relevant information as to his educational, career and family background?

3. Whether the evidence was insufficient to support the jury's verdict in that … Appellant is not guilty of impersonating a public servant as he never "induce[d] another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice[?]"

4. Whether the [c]ourt erred in using the "Deadly Weapon Used" sentencing enhancement pursuant to the sentencing guidelines at 204 [P.S.] § 303.10(a)…?

Appellant's Brief at 4-5.

Appellant first contends that the trial court erred in instructing the jury on his self-defense claim. Specifically, Appellant takes issue with the fact that the court provided an instruction pertaining to Appellant's use of **_deadly_** force, rather than non-deadly force. According to Appellant, his act of pointing a gun at the victims did not constitute deadly force and, thus, the jury instruction was erroneous.

Initially, Appellant has waived his claim for our review. Our Supreme Court has held that,

> under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

**_Commonwealth v. Pressley_**, 887 A.2d 220, 225 (Pa. 2005).

Here, Appellant requested the non-deadly force jury instruction, but he lodged no objection when the court ruled that the deadly-force charge was appropriate in this case. N.T. Trial, 6/21/18, at 3-4, 6. Additionally, Appellant did not object after the court provided the deadly-force instruction to the jury.

*Id.* at 52. Pursuant to **Pressley**, we conclude that Appellant waived his jury-instruction challenge for our review.[1]

In Appellant's second issue, he contends that the trial court erred by sustaining an objection lodged by the Commonwealth during his direct-examination testimony. More specifically, when Appellant's direct-examination began, he testified about his age, where he was born, and the education he had received. **See** N.T. Trial, 6/21/18, at 9. When Appellant began discussing his college education, stating that he "went to Liberty Baptist College to become a pastor" but had not graduated from that school, the Commonwealth objected. *Id.* at 10. After an off-the-record discussion between the court and counsel, the court sustained the Commonwealth's objection and defense counsel proceeded to questioning Appellant on different topics. *Id.*

---

[1] Nevertheless, even if preserved, we would conclude that Appellant's issue is meritless. Initially, this Court has found "that the mere pointing of [a] revolver constitute[s] an act of using deadly force." **Commonwealth v. Mayfield**, 585 A.2d 1069, 1077-78 (Pa. Super. 1991) (*en banc*) (discussing **Commonwealth v. Gonzales**, 483 A.2d 902 (Pa. Super. 1984)); **see also Commonwealth v. Jones**, 332 A.2d 464 (Pa. Super. 1974) (finding that the act of wielding a knife amounts to use of deadly force). Moreover, Appellant does not explain how he was prejudiced by the court's providing a deadly-force instruction, rather than the non-deadly force instruction that he requested. **See Commonwealth v. Baker**, 963 A.2d 495, 507 (Pa. Super. 2008) ("The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal."). Accordingly, Appellant's first issue would not entitle him to relief.

Appellant now contends that the court improperly precluded him from presenting testimony about his work history, community involvement and volunteer work, employment as a private investigator, training as a pastor, "community awards" he has received, and the fact that he is a "good father." Appellant's Brief at 18-19. Appellant insists that this testimony was relevant to demonstrating that he would not have "display[ed] a firearm without sufficient provocation, or … falsely represented [himself] to be a law enforcement officer." ***Id.*** at 19.

Appellant's argument does not convince us that the trial court abused its discretion in precluding his testimony. ***See Commonwealth v. Vandivner***, 962 A.2d 1170, 1179 (Pa. 2009) ("Questions regarding the admissibility of evidence rest within the trial judge's discretion, and an appellate court will reverse the judge's decision only for an abuse of discretion.") (citations omitted). Essentially, Appellant wanted to present the above-discussed "background information" to establish that he is a person of good character, and to prove to the jury that he acted in accordance with that good character on the night of the incident in question. This type of evidence is generally inadmissible. ***See*** Pa.R.E. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); ***see also*** Pa.R.E. 404(b)(1) (prohibiting evidence of "other act[s] … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). While in a criminal case, "a

defendant may offer evidence of the defendant's pertinent trait," Pa.R.E. 404(a)(2), such "[e]vidence … must be limited to [the defendant's] general reputation for the particular trait or traits of character involved in the commission of the crime charged." ***Commonwealth v. Goodmond***, 190 A.3d 1197, 1202 (Pa. Super. 2018) (citations and emphasis omitted). Here, Appellant offers no discussion of how his testimony would have pertained to his reputation for a particular trait involved in the commission of the crimes for which he was on trial. Accordingly, his argument fails to demonstrate that the trial court abused its discretion in prohibiting his at-issue testimony.

Next, Appellant challenges the sufficiency of the evidence to sustain his conviction of impersonating a public servant. To begin, we note that,

> [i]n reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

The crime of impersonating a public servant is defined as follows:

> A person commits a misdemeanor of the second degree if he falsely pretends to hold a position in the public service with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice.

18 Pa.C.S. § 4912.

- 8 -

Appellant contends that the Commonwealth failed to prove that he "induced the alleged victims to do anything or act in reliance on his authority." Appellant's Brief at 21. He insists that he simply "stood calmly at the scene and waited for police to arrive." *Id.* Appellant concedes that had he "stated that he was a police officer and then asked Ms. Santiago and Mr. Lopez not to call the police, that would be a violation of the statute." *Id.* at 22. He claims, however, that he "never asked, suggested or implied that [the victims] do anything" and, therefore, the evidence was insufficient to sustain his conviction for impersonating a public servant. *Id.*

We disagree. The victims both testified that when Ms. Santiago told Appellant she was on the phone with the police, he "said that he was one of them, and pulled out a badge." N.T. Trial, 6/201/18, at 35; *see also id.* at 86-87. Ms. Santiago further testified that Appellant said that the police "weren't going to do [anything] to him, [and] that he was going to prove to them that [the victims] were wrong." *Id.* at 38. Appellant's action of showing a badge, and his statements to the victims, were sufficient to demonstrate that he intended the victims to submit to his pretense of authority, or otherwise to act in reliance thereon. Namely, the jury could have reasonably inferred from Appellant's words and behavior that he intended to dissuade the victims from reporting his conduct to the police. Accordingly, the evidence was sufficient to support Appellant's conviction of impersonating a public servant.

In Appellant's fourth and final issue, he challenges the court's application of the sentencing guidelines with the deadly weapon *used* enhancement (DWUE), rather than the guidelines with the deadly weapon *possessed* enhancement (DWPE). Appellant argues that the legislature intended that the DWUE guidelines apply only where a gun is actually fired, and the DWPE guidelines apply in cases such as this, where a gun is not discharged.

We disagree. The DWUE statute reads, in pertinent part:

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). **An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:**

**(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded,** or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10(2) (emphasis added). Notably, if the legislature intended the DWUE guidelines to only apply in cases where a gun is *fired*, as Appellant contends, then it would not have included an *unloaded* firearm when defining the conduct that triggers application of the DWUE.

Moreover, based on the language of the statute, we agree with the trial court that the DWUE applied to Appellant's simple assault and impersonating a public servant convictions because Appellant

- 10 -

used the firearm to threaten both victims by pointing it directly at them while they were in their car. In addition[,] this [c]ourt found that [the DWUE] applied to [Appellant's conviction for] impersonating a public servant because he displayed [the gun] along with a badge to impersonate a police officer in an effort to make that falsehood work to his benefit.

TCO at 21-22. Therefore, Appellant's challenge to the court's application of the DWUE guidelines is meritless.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/18/19