J-S23026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARIUS MCDOWELL | : | |
| | : | |
| Appellant | : | No. 3272 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009409-2017

BEFORE:  NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:                          **FILED JUNE 22, 2020**

Darius McDowell (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common pleas following his jury conviction of persons not to possess firearms.[1]  Appellant contends the trial court erred by (1) precluding certain cross-examination of police officers and abandoning its role as an impartial arbiter; (2) exhibiting bias in favor of the Commonwealth in the presence of the jury; and (3) failing to give a curative jury instruction about the burden of proof.  We affirm.

The trial court summarized the Commonwealth's evidence at trial as follows:

---

[1] 18 Pa.C.S. § 6105(a)(1).

On October 5, 2017, [Philadelphia] police in the 39th district received a call over police radio to respond to 1917 West [Venango] Street where a black man wearing a blue shirt was banging on the door of the residence with a gun.

Officer [Marlon] Robinson, the first officer on the scene, went up [to] the porch and knocked on the door for 1917 West [Venango], without response. . . As other officers approached, Officer Robinson directed them to a silver Nissan car parked on the street.

Officers [Matthew] Ibbotson and Kology approached the vehicle. Although the windows were tinted, the front windshield was not. Officers Ibbotson and Kology observed a fired cartridge casing on the windshield against the wiper blade, and other casings in the car. They observed Appellant in a reclined seat, wearing a blue shirt with a logo on the front.

Officers Ibbotson and Kology opened the car door, to which Appellant responded "Get the fuck out of here" and then closed the door on the officers. The officers opened the door again and attempted to remove [A]ppellant from the vehicle[, "tell[ing] him to step out."[2]] A struggle ensued, which was joined by additional officers. At some point, Officer [Allen] Reed announced that he was deploying his electronic control weapon (ECW) also known as a taser. The officers engaging with Appellant then stepped back to avoid being shocked by the taser. Appellant did not appear to react to the taser, and instead removed the taser clips from his clothing.

Officer Ibbotson observed what appeared to be the outline of gun in Appellant's left pant pocket. He felt the object and determined it was a gun. Officer Ibbotson shouted out "gun" to warn the other officers, then put his hands over the opening of the pocket and over the gun, while laying his body across Appellant, to prevent him having access to the gun. As Appellant was restrained by the other officers, Officer Ibbotson retrieved the gun from Appellant's left pocket. Officer Ibbotson then stepped away from the vehicle to remove the magazine and clear the weapon to avoid a discharge.

---

[2] N.T., 8/14/18, at 93.

During the course of the struggle, Appellant was flailing, throwing punches, [and] kicking and he spit blood on the officers. The officers used force, including a closed fist strike to Appellant's face, to subdue him. After Appellant was subdued, a second magazine was removed from his other pant pocket.

Trial Ct. Op., 5/16/19, at 1-3 (citations to trial transcript omitted).

Appellant was charged with persons not to possess firearms and other offenses. On March 6, 2018, he filed an omnibus pre-trial motion to suppress. At a suppression hearing on July 24, 2018, Appellant argued Philadelphia police did not have reasonable suspicion to open his car door and forcibly remove him from the vehicle. He argues the recovered firearm, live ammunition, and fired shell casings were recovered as a result of an unlawful stop and seizure. N.T. Suppression H'rg, 7/24/18, at 43. The trial court denied his motion, finding credible the testimony of Officer Kology — that he "ordered [Appellant] out and tried to open the door" — and concluding that under the totality of the circumstances, there was probable cause for the search, seizure, and arrest of Appellant. *Id.* at 49-50.

This case proceeded to a jury trial on August 13, 2018 on a sole charge of persons not possess firearms. Prior to the presentation of evidence, both parties presented oral motions in *limine*. Appellant argued the gun was in the glove compartment of the car — and not, as the officers testified, on his person — and that he wished to cross-examine the officers regarding their use of force to challenge their credibility, as "their stories are all over the place and the jury needs to know that." N.T. Jury Trial,

8/13/18, at 11, 13. The trial court advised Appellant that he was not to relitigate his motion to suppress. The court advised Appellant's counsel:

> Clearly, you can talk about the struggle. In other words if he resisted and did A, B, or C, then there could be evidence that the officers responding doing D, E, and F so they could apprehend and recover the firearm just like there was during the motion to suppress. However, his injuries are not relevant to whether or not he possessed that firearm. And its prejudicial value here far outweighs any probative value, of which I find none.

*Id.* at 18.

Following Appellant's opening statement, the trial court informed the jury:

> Ladies and gentlemen, we're here to decide whether [Appellant] possessed a firearm while being prohibited from doing so. You're not here to decide whether the stop or arrest of [Appellant] was lawful. That's been done, okay? Possession is all that you're here to decide, possession of a firearm by a person prohibited to do so.

N.T., 8/13/18, at 46.

During the course of trial, Appellant cross-examined multiple police officers involved in the incident. While cross-examining Officer Robinson about the number of officers who entered Appellant's vehicle, the trial court interjected and stated this issue has "been asked and answered a whole bunch of times." N.T. Jury Trial, 8/14/18, 36-37. Officer Robinson then testified five officers were needed to remove Appellant from the vehicle, to which the court asked, "Because he was resisting and kicking and things like that?" *Id.* at 37. The officer responded, "Yes." *Id.*

- 4 -

At trial,

> Appellant testified that he was sitting in the car waiting for his girlfriend, [Shakira Maddox,] who was the owner of the car. He testified that she had just left to take her twin children to daycare. Before doing so, Appellant testified, she had retrieved her gun and locked it in the glove compartment. Appellant denied ever [ ] touching or possessing the gun.

Trial Ct. Op. at 3 (citations to trial transcript omitted). Appellant presented evidence of his arrest photo on the date of the incident to show his injuries. During Appellant's direct examination, he testified that police did not have a search warrant and were punching him. N.T., 8/15/18, at 44. The trial court instructed the jury to "disregard any mention of a search warrant," and stated "the legality of the stop [and] the search and seizure" had "already been decided . . . under the law," and that the jury was to decide only whether Appellant possessed a firearm while prohibited from doing so. *Id.* at 44. Appellant's attorney also likewise instructed him to only testify to "what happened" and "no reasons for anything" else. *Id.* Appellant, however, then stated he had "blood dripping down [his] face" from the use of force by police. *Id.* at 45. At that point, the trial court instructed Appellant's counsel to "control his witness before I take him down." *Id.*

We further note that on cross-examination, the Commonwealth and Appellant had the following exchange:

[Commonwealth:] How long have you known Shakira Maddox[?]

[Appellant:] About nine months before this incident.

Q. Okay. You said that when she left to go to the daycare, you didn't see her until later that night?

A. True.

Q. Are you still in contact with her?

A. I wouldn't say that.

Q. You wouldn't say that?

A. No.

Q. When you saw her later that night, was that because she came down to detectives?

[Appellant's counsel:] Objection, relevance.

The Court: Overruled.

[Appellant:] She was in the district.

Q. She came down and gave a statement, correct?

A. Correct.

Q. Shakira Maddox is not here today, correct?

A. I have no knowledge of that. I wish she was.

N.T., 8/15/18, 49-50. Due to this exchange, Appellant requested the court give a curative instruction, arguing the Commonwealth improperly shifted, to Appellant, the burden of ensuring Maddox was present. *Id.* at 52. The trial court denied this request, but explained that any such instruction would be "redundant" to its instructions about the burden of proof. *Id.* at 53.

The jury convicted Appellant of person not to possess a firearm. On October 18, 2018, the trial court sentenced Appellant to seven and a half to

15 years' incarceration, followed by 3 years' probation. Appellant timely filed a notice of appeal on November 13, 2018. He complied with the court's order and filed a concise statement pursuant to Pa.R.A.P. 1925(b) on January 23, 2019.

Appellant presents three issues for our review:

A. Is not a new trial warranted when the trial court's errors denied [A]ppellant the right to present his defense and thereby denied him a fair trial inasmuch as where the defense at trial was that police severely beat [A]ppellant, and then fabricated that [A]ppellant possessed a firearm in order to justify the injuries [A]ppellant sustained by police, the trial court erred by 1) precluding the defense from cross-examining the officers about the use of force as the testimony was relevant to the police officers' credibility and 2) abandoning its role as an impartial arbiter when it credited the police's actions as lawful?

B. Did not the trial court violate [A]ppellant's right to a fair trial when the trial court repeatedly engaged in a pattern of bias in favor of the prosecution and exhibited antipathy and prejudice toward [A]ppellant and defense counsel in the presence of the jury?

C. Did not the trial court err in failing to issue a curative instruction to the jury when the prosecutor shifted its burden to the defense and asked [Appellant] if the owner of the firearm was present in court?

Appellant's Brief at 4.

First, Appellant avers the trial court erred when it denied his right to present a defense of police fabrication that Appellant had a firearm on his person, where, Appellant maintains, the gun was in fact in the glove compartment of the vehicle. Appellant alleges the trial court's refusal to allow cross-examination of police officers concerning their use of force is

detrimental to his defense because it supports their fabrication. Appellant's Brief at 16. Specifically, Appellant argues the trial court "breached the mandate of judicial impartiality" when it interrupted his cross-examination of Philadelphia Police Officer Marlon Robinson by stating on the record, "Because he was resisting and kicking and things." *Id.* at 18, *citing* N.T., 8/14/18, at 46-47. Appellant contends the trial court's actions show bias in favor of the Commonwealth and police.

"[T]he scope of cross examination is a matter within the trial court's discretion and will not be disturbed by this Court absent an abuse of that discretion." ***Commonwealth v. Kouma***, 53 A.3d 760, 768 (Pa. Super. 2012) (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012).

Pennsylvania Rule of Evidence 611 provides in pertinent part:

(a) Control by the Court; Purposes. The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

(1) make those procedures effective for determining the truth;

(2) avoid wasting time . . . .

Pa.R.E. 611(a)(1)-(2). Further, "Where the interest of justice so requires, the court may examine a witness regardless of who calls the witness." Pa.R.E. 614(b). "It is always the right and sometimes the duty of a trial

judge to interrogate witnesses, although, of course, questioning from the bench should not show bias or feeling nor be unduly protracted." *Commonwealth v. Brown*, 265 A.2d 101, 107 (Pa. 1970). A trial judge's questions cannot show bias, hostility, or unfairness. *Commonwealth v. Hodge*, 369 A.2d 815, 819 (Pa. Super. 1977). "A new trial is required . . . only when the trial court's questioning is prejudicial, 'that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'" *Commonwealth v. Purcell*, 589 A.2d 217, 224 (Pa. Super. 1991) (citation omitted).

In its opinion, the trial court addressed Appellant's claims and determined:

> [T]he Court made clear pre-trial that Appellant was not to relitigate the motion to suppress. The issue at trial was whether Appellant possessed the firearm, or whether the police fabricated evidence that the firearm was found on his person. Excursions into allegations of excessive force or lawfulness of the seizure of evidence were not germane to the issues at trial and were not before the jury. When Appellant's counsel nonetheless disregarded the Court's rulings, the [court] appropriately stopped him and corrected the matter for the jury.
>
> * * *
>
> . . . The Court's directions were necessary to keep the jury focused on the issues before it. Defense counsel cannot deliberately disregard the Court's instructions, then complain that the Court's efforts to correct the record were improper. It was the defense that created the situation requiring court intervention.

The fact is that defense was permitted to fully develop its theory that the officers fabricated evidence that the gun was on Appellant, rather than in the glove compartment. The defense was also permitted to open, close, and present evidence of the force used against Appellant. What the defense was not permitted to do, however, was turn the trial into a referendum on the amount of forced used or the legality of the police focusing their investigative attentions on Appellant. Neither of these questions was before the jury.

\* \* \*

The issue of how many officers were engaged with Appellant and why[ ] had already been fully explored with [Officer Robinson], and would be again with subsequent witnesses. The Court was well within its right to end the repetition, elicit the explanation the officer had already given, and move the case along. Trial courts are authorized to minimize cumulative evidence and waste of time in their responsibility for the efficient administration of justice. The Court's concise and focused questioning was to accomplish just that.

Trial Ct. Op. at 4-5, 7 (citations omitted).

Appellant's attempt to distinguish this Court's ruling in **Commonwealth v. Brown**, 212 A.3d 1076 (Pa. Super. 2019), is in error. In **Brown**, the defendant was charged with aggravated assault of an officer. **See id.** at 1079. Prior to trial, the trial court granted the Commonwealth's motion *in limine* to preclude evidence that the defendant's arm was broken during his arrest. **Id.** at 1080. On appeal, the defendant argued such evidence was relevant to show the officer "was biased and motivated to testify falsely against [him] in order to avoid civil liability for injuring" him. **Id.** at 1086. This Court held the "probative value of the evidence of [the defendant's] injury, as proof of [the officer's] potential motive for offering

- 10 -

false testimony, did not outweigh its potential prejudice." *Id.* at 1087; *see also* Pa.R.E. 403 (stating court may exclude relevant evidence if its probative value is outweighed by danger of unfair prejudice). We further elaborated the evidence would have risked "unfairly rousing emotions of the jury against the Commonwealth." *Id.*

Here, we agree with the trial court's rationale and determination. The court did not abuse its discretion in limiting Appellant's cross-examination. *See Kouma*, 53 A.3d at 768. Appellant explained his theory of defense was police fabricated testimony through discrepancies in the officers' testimony. The court specifically told Appellant's trial counsel that he "may explore all of those things [inconsistent testimonies]." N.T., 8/13/18, at 11. However, the court properly excluded questions about Appellant's particular injuries because its probative value did not outweigh the danger of unfair prejudice in attempting to prove motive for officers to testify falsely. *See Brown*, 212 A.3d at 1087.

Additionally, the trial court's questioning of Officer Robinson was within its discretion since the issue of how many officers were involved in subduing Appellant had been explored. *See* N.T., 8/14/18, at 18, 36-37. The trial court exercised reasonable control by avoiding repetitive questions and answers. *See* Pa.R.E. 611.

In his second issue, Appellant avers the trial court violated his right to a fair trial when it showed a pattern of bias in favor of the Commonwealth,

and antipathy and prejudice toward him. In support, Appellant contends the court improperly informed the jury, on multiple occasions, that police acted legally when they stopped, arrested, and seized Appellant. Appellant's Brief at 19. Appellant argues the court prejudiced him when it vouched for police; suggested Appellant's trial counsel tried to mislead the jury; and remarked that Appellant's trial counsel should "control his witness before [the court] takes him down." *Id* at 21, *citing* N.T., 8/15/18, at 45.

It is within the court's discretion to exercise reasonable control of proceedings to ensure an orderly trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1255 (Pa. Super. 2013) (trial court reasonably exercised judicial control of proceedings to ensure orderly trial after defense attorney's repeated objections interrupted Commonwealth's closing argument); *see also Commonwealth v. Jones*, 683 A.2d 1181, 1191–92 (Pa. 1996) (trial court's comments to defense counsel were directed to maintaining order and decorum in courtroom, and did not entitle defendant to relief).

Instantly, the trial court acted to ensure the jury understood the narrow issue before it, and would not be misled or confused, when it instructed that this case was not about the stop, arrest, or use of force by police, but whether Appellant possessed a firearm. *See* N.T., 8/13/18, at 46; N.T., 8/15/18, at 78-79. Further, the trial court properly instructed the jury, during Appellant's direct examination, to disregard Appellant's mention of a lack of a search warrant. *See* N.T., 8/15/18, at 44. When Appellant

then immediately testified, despite his counsel's additional instruction to discuss only "what happened," that officers were on top of him and he could feel blood running down his face. *Id.* at 44-45. This response prompted the trial court to admonish Appellant's trial counsel to control his client. *Id.* at 45. The trial court reasonably exercised judicial control of the proceedings to ensure an orderly trial. *See Jones*, 683 A.2d at 1191-92; *Collins*, 70 A.3d at 1255. Thus, Appellant is not entitled to relief.

Lastly, Appellant claims the trial court erred when it failed to give a curative jury instruction concerning the burden of proof in a criminal trial. Appellant argues the Commonwealth shifted the burden of proof to him when it asked him if Maddox, the owner of the firearm, was present in the courtroom. Appellant avers a new trial is warranted because the Commonwealth implied Maddox would deny his testimony that she owned the gun and placed it in the glove compartment of the vehicle. Appellant's Brief at 24. Appellant contends these questions shifted the burden of proof to him, violating his constitutional right to due process.

As a prefatory matter, we consider whether Appellant has preserved any objection to the jury instructions. Pennsylvania Rule of Criminal Procedure 647(C) provides in pertinent part: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto **before the jury retires** to deliberate." Pa.R.Crim.P. 647(C) (emphasis added). Under Rule 647(C), the failure to

object or take exception to a jury instruction before the jury retires to deliberate results in waiver of review of the instruction. *Commonwealth v. Laird*, 988 A.2d 618, 646 (Pa. 2010). *See also Commonwealth v. Cosby*, 224 A.3d 372, 422 (Pa. Super. 2019) (party's "objections at the charging conference were not sufficient to preserve his challenge to the consciousness-of-guilt jury charge issued by the trial court because he did not also object when the charge was given to the jury").

While Appellant requested a curative instruction about the shifting of the burden of proof, Appellant raised no objection after the trial court charged the jury. *See* N.T., 8/15/18, at 114. Furthermore, when the court inquired, "Anything from either party?," Appellant's counsel responded, "No, Your Honor." *Id.* Therefore, Appellant waived this issue for failing to object to the instructions as given. *See* Pa.R.Crim.P. 647(C); *Laird*, 988 A.2d at 646.

Moreover, even if this claim were reviewable, it would be meritless. This Court has stated:

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

***Commonwealth v. Baker***, 963 A.2d 495, 507 (Pa. Super. 2008) (citation omitted). A "refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." ***Id.*** (citation omitted).

In the present case, the trial court reasoned:

> On cross examination of Police Officer Reed, defense counsel elicited that Shakira Maddox told him that the gun was hers. [N.T., 8/14/18, at 117]. Shakira Maddox's ownership of the gun was also the subject of the second question on direct examination of Appellant by his counsel. [N.T., 8/15/18, at 34]. In further direct examination Appellant [described] his contacts with Maddox during the time prior to his arrest including her operation of the vehicle in which Appellant was arrested and her alleged retrieval of the firearm from under the seat and alleged placement of the firearm in the glove compartment. [N.T., 8/15/18, at 39-40]. On cross-examination the [Commonwealth] asked: "Shakira Maddox is not here today, correct?" [N.T., 8/15/18, at 50]. There was no objection to this question and Appellant responded. After Appellant completed his testimony, his counsel then asked for a curative instruction, alleging that the question by the prosecutor shifted the burden of proof. [N.T., 8/15/18, at 50]. The Court concluded the question was not erroneous[, N.T., 8/15/18, at 53,] and further that the jury had been and would be instructed on the burden of proof, which it was. ***See*** [N.T., 8/13/18, at 21-22; N.T., 8/15/18, at 98-99].

Trial Ct. Op. at 9-10 (some citations omitted). We further note the court instructed the jury:

> . . . [Appellant] is presumed innocent throughout the trial and unless and until you conclude, based on a careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt. It is not [Appellant's] burden to prove he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that [Appellant] is guilty of that crime beyond a reasonable doubt. The person accused of a crime is not required to present evidence or prove anything in his or her own defense. If the Commonwealth's evidence fails to meet its [burden], then your verdict must be not guilty. On the

- 15 -

other hand, if the Commonwealth's evidence does prove, beyond a reasonable doubt, that [Appellant] is guilty, then your verdict should be guilty. . . .

N.T., 8/15/18, at 98. Appellant cannot establish he was prejudiced by the absence of this particular curative jury instruction, when considered in the context of the jury charge as a whole, and thus he would not be entitled to relief. *See Baker*, 963 A.2d at 507.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliot joins this Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/20