J-A29013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAQUEL SHAMON TIRADO | : | |
| | : | |
| Appellant | : | No. 416 WDA 2022 |

Appeal from the PCRA Order Entered March 16, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003831-2016

BEFORE:  BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: APRIL 3, 2023**

Appellant, Jaquel Shamon Tirado, appeals from the post-conviction court's order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

This Court previously detailed the facts of Appellant's case in our disposition of his direct appeal, which we need not fully reiterate herein.  ***See Commonwealth v. Tirado***, 1225 WDA 2019, unpublished memorandum at *1-5 (Pa. Super. filed Sept. 22, 2020).  Briefly, Appellant was charged with first-degree murder, third-degree murder, aggravated assault, conspiracy, and various other charges related to the killing of Stephen Bishop in Erie.  The Commonwealth's evidence, which included surveillance videos, showed Appellant — who was a 17-year-old juvenile at the time — and two other individuals approach Bishop and walk with him before the sound of eight gunshots rang out.  Appellant could then be seen on video fleeing from the

scene. A subsequent search of his residence revealed clothing matching that which Appellant was wearing at the time of the shooting, and that clothing later tested positive for gunshot residue. Bishop died from a gunshot wound that entered his left arm and traveled into his chest.

Ultimately, a jury convicted Appellant of first-degree murder and various other, related offenses. He was sentenced to an aggregate term of 42 years' to life incarceration. We affirmed his judgment of sentence on direct appeal, and our Supreme Court denied his subsequent petition for allowance of appeal. *See Commonwealth v. Tirado*, 240 A.3d 951 (Pa. 2020) (unpublished memorandum), *appeal denied*, 256 A.3d 420 (Pa. 2021).

> On July 7, 2021, Appellant filed a *pro se* [PCRA petition].... Therein, Appellant raised eleven (11) claims: a general claim of violation of the Constitution of this Commonwealth or the laws of the United States, nine (9) claims of ineffective assistance of counsel,[4] and an illegal sentence claim. Appended to the *pro se* PCRA [petition was] his sixty-nine (69) page[,] *pro se* Brief.
>
> > [4] In his *pro se* [petition] and brief, Appellant raises the following nine (9) ineffectiveness claims: (1) failure of trial counsel to challenge probable cause for issuance of an arrest warrant; (2) failure of trial counsel to challenge the racial composition of the jury pool; (3) failure of trial counsel to move for suppression of Appellant's statements to the police in the bedroom; (4) failure of trial counsel to "introduce a mere presence or negate intent defense"; (5) failure of trial counsel to object to jury instructions on accomplice liability; (6) failure of trial counsel to object to jury instructions for "the deadly weapon charge not being equally applied to both murder charges"; (7) failure of trial counsel to object to jury instructions as to "the 'burden shifting' charge that told the jury to infer specific intent from a deadly weapon"; (8) failure of appellate counsel to "federalize each claim on appeal"; and (9) failure of trial counsel to "challenge the sentence under the merger doctrine[."]

On July 15, 2021, th[e] PCRA court appointed PCRA counsel who, on August 11, 2021[,] requested a sixty (60)-day extension of time within which to file a supplemental PCRA [petition] or a [`]no-merit[']letter.[1]  On August 11, 2021, the PCRA court granted the request and directed PCRA counsel to file an appropriate response by October 12, 2021.  On October 12, 2021, PCRA counsel filed a Supplemental Petition for Post-Conviction Collateral Relief.  The supplemental PCRA [petition was] essentially a combination no-merit letter and a supplemental PCRA.[5]  On October 13, 2021, the PCRA court directed the Commonwealth to file a response to the supplemental PCRA [petition] within thirty (30) days.  The Commonwealth did so on November 12, 2021.

> [5] The only claims expounded upon in [PCRA counsel's] supplemental PCRA [petition] were the three claims alleging ineffectiveness for failure to object to jury instructions. PCRA counsel concluded the other claims were not meritorious.

PCRA Court Opinion (PCO), 4/27/22, at 10-11 (unnecessary capitalization and internal citations to the record omitted).

On February 9, 2022, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing.  Appellant filed a *pro se* response, asking for an extension of time to file a response to the Rule 907 notice.[2]  The docket indicates that the *pro se* document was forward to Appellant's counsel and no further action was taken.  On March 16, 2022, the PCRA court issued an order denying Appellant's petition without a hearing.

---

[1] *See **Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (setting out the procedure for counsel to withdraw in the PCRA context).

[2] Nothing in Appellant's *pro se* response indicated that he wished to assert a challenge to the effectiveness of his PCRA counsel for abandoning several of the trial-counsel-ineffectiveness claims he raised in his *pro se* petition. Appellant also did not file any *pro se* document with this Court indicating he wished to challenge the representation of his present counsel.

- 3 -

Appellant filed a timely notice of appeal, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a Rule 1925(a) opinion on April 27, 2022. Herein, Appellant states the following issues for our review:

> A. Whether trial counsel was ineffective in failing to raise an objection to the jury instruction on accomplice liability?
>
> B. Whether trial counsel was ineffective in failing to raise an objection to the jury instruction relating to the deadly[-]weapon charge not being equally applied to both murder counts?
>
> C. Whether trial counsel was ineffective in failing to raise an objection to the burden[-]shifting impact of the jury instructions dictating that an inference could be drawn of specific intent from the deadly weapon?
>
> D. Whether PCRA counsel's submission of a no-merit letter was appropriate as to the remaining *pro se* claims involving allegations that trial counsel was ineffective in failing to challenge probable cause for issuance of an arrest warrant; that trial counsel was ineffective in failing to challenge the racial composition of the jury pool; that trial counsel was ineffective in failing to move for suppression of … [A]ppellant's statements to the police; that trial counsel was ineffective in failing to introduce a mere presence or negate intent defense; that trial counsel was ineffective in failing to federalize each claim for purposes of the direct appeal and that trial counsel was ineffective in failing to challenge the sentence under the merger doctrine?

Appellant's Brief at 2.

We begin by recognizing that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516,

520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Appellant's first three issues assert ineffective assistance of counsel (IAC).

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

**Commonwealth v. Franklin**, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

Appellant first argues that his trial counsel was ineffective for not objecting to the court's jury instruction on accomplice liability for his murder charges. Appellant explains that

> [t]he Commonwealth sought jury charges as to both first[-] and third[-]degree murder predicated on the theory that [Appellant] was the only person who fired the fatal and non-fatal gunshots. However, the Commonwealth then sought to introduce the alternate theory of accomplice liability predicated on [the fact that] if the jury did not accept the theory of [Appellant's] direct involvement as the shooter[,] then [Appellant] should still be implicated and found guilty as an accomplice to the actual shooter, notwithstanding that neither of the other [two] individuals purportedly involved were … criminally charged[,] let alone even identified.

Appellant's Brief at 12. Appellant notes that, "[i]t is well-settled that for purposes of the attachment of accomplice culpability[,] the purported accomplice must harbor the requisite specific intent to kill and it cannot be transferred or imposed upon proof of intent to kill by the principal alone." *Id.* at 10. He insists that, here, the evidence failed to demonstrate, "beyond a reasonable doubt[,] that [Appellant] had the shared intent to commit the subject homicide." *Id.* Thus, he contends that the record did not support a jury instruction on accomplice liability for his murder charges and, accordingly, his counsel was ineffective for failing to object to court's providing this instruction.

No relief is due. Initially, on direct appeal, Appellant challenged the sufficiency of the evidence to support his first-degree murder conviction. This Court explicitly held that the evidence proved Appellant possessed the specific intent to kill. *See Tirado*, No. 1225 WDA 2019, unpublished memorandum at *6, *8. Thus, there is no arguable merit to Appellant's claim that an accomplice instruction was not supported by the record because there was no evidence that he shared the specific intent to kill with his cohort(s).

Additionally, we agree with the PCRA court that the instruction provided on accomplice liability sufficiently notified the jury that it must find that Appellant *himself* possessed the specific intent to kill in order to convict him of first-degree murder as an accomplice. The PCRA court explained:

In pertinent part, the court instructed the jury:

- 6 -

THE COURT: A person can also be guilty of first[-]degree murder when he did not cause the death personally, when the Commonwealth proves beyond a reasonable doubt that he was an accomplice in the murder.

To be an accomplice in the murder, **the defendant must have himself, intended that a first[-]degree murder occur**, and that the defendant then encourages, aids or attempts to aid the other person in planning or committing it.

To sum up, a defendant may not be found guilty of the crime of first[-]degree murder where the death is caused by another, **unless the defendant himself, as a conspirator or an accomplice, has the specific intent or goal of bringing about a murder in the first degree.**

[N.T. Trial (Day 4), 8/3/17, at] 197-[]98 (emphasis added). The court also properly defined specific intent, and what the jury should consider in determining whether a defendant had a specific intent to kill at Count One. [**Id.** at] 185-187, 222-[]23.

As there was no legal basis to object to the instructions on accomplice liability and specific intent as it relates to accomplice liability, the ineffectiveness claims lack arguable merit. Further[,] no prejudice ensued.

PCO at 24-25 (some emphasis added by PCRA court; some emphasis added by this Court). As Appellant does not identify how any specific language of the accomplice-liability instruction was improper, we discern no error in the PCRA court's rejection of his claim that counsel should have objected to the instruction.

Next, Appellant argues that his trial counsel was ineffective for not objecting to the court's jury instruction regarding the use of a deadly weapon as circumstantial evidence of the specific intent to kill. Again, Appellant does not set forth the language of, or cite to, the specific jury instruction he is

challenging. However, the PCRA court interpreted Appellant's claim as challenging the following charge:

> THE COURT: If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.

PCO at 26 (quoting N.T. Trial (Day 4) at 186) (emphasis added by PCRA court omitted).

According to Appellant, the court erred by "failing to … ensure that the jury comprehended that the deadly weapon use also equally applied to a finding of third[-]degree murder[,]" as well as first-degree murder. Appellant's Brief at 14. Appellant insists that

> [t]he impact of the failure to ensure that the deadly[-]weapon element applied to both degrees of [murder] was that the court was implicitly reiterating that it applied to first[-]degree murder, which could have had the actual impact of focusing the jury on that criminal charge and discounting the third[-]degree murder option, whether unwittingly or negligently. The trial [c]ourt repeated this specific instruction some five times[,] thereby reinforcing the resultant prejudice to … [A]ppellant and imposing undue emphasis on first[-]degree murder as opposed to rendering a true and fair verdict as to first[-]degree murder or third[-]degree murder if [Appellant] was to be found guilty.

*Id.* at 14-15.

Appellant's argument is unconvincing. When reviewing a challenge to a jury instruction:

> [W]e must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately

presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

***Commonwealth v. Baker***, 963 A.2d 495, 507 (Pa. Super. 2008), *appeal denied*, … 992 A.2d 885 ([Pa.] 2010) (internal citation omitted).

A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

***Id.*** Additionally, "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." ***Commonwealth v. Eichinger***, … 108 A.3d 821, 845 ([Pa.] 2014).

***Commonwealth v. Postie***, 200 A.3d 1015, 1026 (Pa. Super. 2018).

Here, the trial court instructed the jury, in pertinent part, as follows:

THE COURT: The defendant has been charged with the offense of first-degree murder. First[-]degree murder occurs when a perpetrator has the specific intent to kill. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:

First, that Steven Bishop is dead.

Second, that the defendant killed him.

And third, that the defendant did so with the specific intent to kill and with malice.

A person has a specific intent to kill if he has fully formed the intent to kill, and is conscious of his own intention. As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice.

***

- 9 -

When deciding whether the defendant had a specific intent to kill, you should consider all of the evidence regarding his words and conduct and the attending circumstances that may show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.

\*\*\*

Third[-]degree murder is any killing with malice that is not first[-]degree murder. The defendant has been charged with third[-]degree murder. In order to find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:

First, that Steven Bishop is dead.

Second, that the defendant killed him.

And third, that the defendant did so with malice.

The word malice as I am using it, has a special legal meaning. It does not mean simply hatred, spite, or ill will. Malice is a shorthand way of referring to any of the three different mental states that the law regards as being bad enough to make a killing murder.

For murder of the third degree, a killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another.

In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that he took action while consciously, that is knowingly, disregarding the most serious risk he was creating, and that by his disregard of that risk, he demonstrated his extreme indifference to the value of human life.

N.T. Trial (Day 4) at 185-86.

We do not discern anything inadequate, unclear, misleading, or confusing about the court's charge as a whole. The jury was not "palpably

misled by what the trial judge said" and there was no "omission which is tantamount to fundamental error." ***Baker***, 963 A.2d at 507. We recognize that the court could have instructed the jury that, for the offense of third-degree murder, it could infer the requisite intent of malice from Appellant's use of a deadly weapon on a vital part of the victim's body. ***See Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 540 (Pa. Super. 1995) ("Malice is properly implied when a deadly weapon is directed to a vital part of the victim's body.") (citations and brackets omitted). However, we do not conclude that this omission, in and of itself, caused Appellant prejudice, where the court clearly and accurately defined the requisite *mens rea* necessary for third-degree murder (*i.e.*, malice).

Additionally, contrary to Appellant's argument, we do not discern anything in the court's deadly-weapon instruction that would have improperly swayed the jury to convict him of first-degree rather than third-degree murder. The instruction does not indicate any emphasis on one degree of murder over the other but, instead, clearly and accurately defines each offense and the elements thereof. Moreover, Appellant does not quote or cite to where in the record the court purportedly repeated the deadly-weapon instruction "some five times[,]" thereby stressing the first-degree murder charge. Appellant's Brief at 14. We decline to scour the record for him.

Consequently, Appellant has failed to demonstrate that the deadly-weapon instruction improperly emphasized the crime of first-degree murder, or somehow influenced the jury to convict Appellant of that offense rather

- 11 -

than murder of the third degree.  In other words, Appellant has not proven that the jury would have convicted him of third-degree murder, but for the court's deadly-weapon instruction.  Consequently, he has not demonstrated that his counsel acted ineffectively by not objecting thereto.

In Appellant's third issue, he contends that "the jury instructions as constituted impermissibly shifted the burden of proof unto [*sic*] the defense as to a funding [*sic*] of specific intent relative to first[-]degree murder." Appellant's Brief at 16.  More specifically, Appellant claims that "the [c]ourt['s] instruction as to use of a deadly weapon had the effect of improperly shifting the burden of proof and was constitutionally defective and counsel was ineffective in failing to assert an objection thereto." *Id.* at 17.  He continues:

> The [trial c]ourt repeatedly instructed the jury that the use of a deadly weapon on a vital body part could be used to infer a specific intent to commit first[-]degree murder.  … [A]ppellant has challenged the conduct of the [c]ourt in this regard as … unduly emphasizing and influencing the jury by limiting the supplemental instructions in response to jury questions to first[-]degree murder alone and omitting third[-]degree murder.[3] … [A]ppellant further posits now that the application of this instruction was constitutionally defective[,] resulting in a burden shifting that undermines the efficacy of the trial and the verdicts.  [Appellant] argues that any instruction that permitted malice aforethought or specific intent to commit murder to be inferred from the use of a deadly weapon was constitutionally infirm.  The impact of the burden[-]shifting nature of this form of instruction serve[d] to alleviate the Commonwealth from its burden of proof to satisfy every element of first[-]degree murder[,] including the requisite intent.

*Id.*

---

[3] Appellant does not cite to what "supplemental instructions" or jury questions he is referring.

- 12 -

Appellant's confusing and undeveloped argument warrants no relief. From what we can glean, it seems Appellant is claiming that the evidence failed to demonstrate that he had the specific intent to kill, or that he aimed a weapon at a vital part of the victim's body. **See id.** (stating "the weapon was no[t] aimed at a vital part of the [victim's] body" and "[t]here were no other factual elements that existed directly or circumstantially to demonstrate specific intent to kill"). Therefore, Appellant apparently concludes that the court's deadly-weapon instruction was inappropriate, and it somehow impermissibly shifted the burden of proof onto Appellant to **disprove** that he had the specific intent to kill, rather than requiring the Commonwealth to prove that element of first-degree murder. **See id.** ("In the absence of the burden[-]shifting nature of the jury instructions, the jury would not have been able to issue a verdict of first[-]degree murder on the facts of the case[.]").

Again, on direct appeal, this Court determined that the evidence was sufficient to prove that Appellant possessed the specific intent to kill the victim in this case. **See Tirado**, No. 1225 WDA 2019, unpublished memorandum at *6, *8. We also concluded that, "[a]lthough the bullet entered [the v]ictim's left arm, it penetrated his chest, suggesting that killing [the v]ictim was the shooter's intention all along." **Id.** at *8. Clearly, we determined that the victim was shot in a vital part of his body, which supports the trial court's deadly-weapon instruction and demonstrates that Appellant possessed the specific intent to kill. Thus, the trial court's jury instruction did not

impermissibly shift the burden of proof, and Appellant's counsel was not ineffective for failing to object to that charge.

Finally, in Appellant's fourth issue, his PCRA counsel sets forth the remaining ineffectiveness claims that Appellant asserted in his *pro se* petition. However, rather than developing an argument in support of these claims, counsel instead discusses why each of them are meritless. **See** Appellant's Brief at 18-22. Thus, counsel has effectively decided to waive/abandon these claims for our review, which is within counsel's discretion to do. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); **see also Commonwealth v. Jones**, 815 A.2d 598, 613 (Pa. 2002) ("[A]ppellate counsel is not constitutionally obliged to raise every conceivable claim for relief. Counsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/3/2023