J-S34003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVANTE RUMEAL KING | : | |
| | : | |
| Appellant | : | No. 731 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013382-2017

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.: **FILED: December 28, 2023**

Devante Rumeal King appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County. Upon review, we affirm.

The trial court set forth the facts of the case as follows:

[O]n August 6, 2017[,] at approximately 10:41 p.m., [King] and his two accomplices, one of whom was his brother, Donald Eugene King,[1] went to a residence located at 208 Conestoga Road in Penn Hills, Allegheny County, Pennsylvania, to rob Kevin Trowery. The other accomplice was Dustin Taylor. [King] and his two accomplices were seen fleeing the back door of the residence and Penn Hills police officers gave chase. [King] was arrested after a short pursuit. During the course of the investigation detectives recovered surveillance videos of the entire incident. The videos disclosed that the victim exited his residence and stood on the front porch. [King] and his two accomplices, while wearing masks, can be seen running toward the victim. The victim attempted to fight off the three actors by raising a small broom which he had been using to sweep the porch area. Co-defendant, Donald

_____

[1] Donald Eugene King's appeal is also before this Court. That appeal is docketed at 409 WDA 2022.

> Eugene King, shot the victim. The victim fell to the ground and the three actors, including [King], beat the victim while he was on the ground. Donald Eugene King then fired two more shots into the victim's body. The victim died as a result of multiple gunshot wounds. The three actors then entered the victim's residence. They are observed seconds later exiting the residence, still wearing masks, and dragging the victim's body into the residence.

Trial Court Opinion, 1/10/23, at 1-2.

Following a joint trial with co-defendant-brother,[2] a jury convicted King of one count each of murder in the second degree,[3] robbery,[4] conspiracy,[5] criminal trespass,[6] theft,[7] receiving stolen property,[8] and burglary–overnight accommodations—person present.[9] On May 26, 2022, the trial court sentenced King to life imprisonment on the second-degree murder conviction, and to a consecutive aggregate term of imprisonment of 17½ to 35 years on the robbery, burglary, and conspiracy convictions. No further penalty was

---

[2] The third actor, Dustin Taylor, entered a guilty plea in the instant matter and agreed to testify against the King brothers in exchange for a 12½-to-25-year sentence followed by 20 years' probation. **See** N.T. Jury Trial, 12/6/21, at 15.

[3] 18 Pa.C.S.A. § 2502(b).

[4] **Id.** at § 3701(a)(1)(i).

[5] **Id.** at § 903.

[6] **Id.** at § 3503(a)(1)(ii).

[7] **Id.** at § 3921(a).

[8] **Id.** at § 3925(a).

[9] **Id.** at §§ 3501(a)(1)(i), (ii).

imposed on the remaining convictions. King filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises two issues for our review:

1. Did the court below adequately caution the jury as to the evaluation of the accomplice testimony?

2. Does the felony[-]murder sentencing scheme, in allowing intent to commit a dangerous felony to substitute for intent to kill and imposing a life sentence with no possibility of parole, violate the proportionality guarantees of the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution?

Appellant's Brief, at 5.

First, King argues that a portion of the trial court's instruction on accomplice testimony was an error of law or abuse of discretion. Specifically, he claims the court erred in "watering down" the instruction, and that the charge, therefore, was "not complete." Appellant's Brief, at 11, 13.[10] Though acknowledging the court's considerable discretion in fashioning an instruction, King claims the court "refused to charge the jury as to the known danger of an accomplice falsely blaming another person, [and,] under the circumstances

---

[10] King preserved this issue at the charging conference by objecting to the omitted language he suggested for accomplice testimony. Co-defendant Donald Eugene King's counsel objected to certain adjustments and deletions the court planned with respect to the suggested standard instruction, and King's counsel informed the court that he had the same objections on his client's behalf. **See** N.T. Jury Trial, 12/10/21, at 988-89, 991-92. Counsel objected again at the conclusion of the jury instructions. **Id.** at 1111-12. **See** Pa.R.Crim.P. 647(C).

of this case, the strongest possible caution with respect to Taylor's testimony was appropriate." *Id.* at 12-13.[11]  This claim is meritless.

When reviewing a challenge to a jury instruction:

[W]e must review the jury charge as a whole to determine if it is fair and complete.  A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration.  The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa. Super. 2008) (internal citation omitted).  *See also Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (jury charge will be deemed erroneous only if charge as a whole is inadequate, not clear, or has tendency to mislead or confuse, rather than clarify, material issue).

_____

[11] The Suggested Standard Jury Instruction for accomplice testimony provides:

*First*, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source.

*Second*, you should examine the testimony of an accomplice closely and accept it only with care and caution.

*Third*, you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. [However, even if there is no independent supporting evidence, you may still find the defendant guilty solely on the basis of an accomplice's testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.]

Pa. SSJI (Crim) 4.01 (italics and brackets in original).

Further, "[a] charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. **Consequently, the trial court has wide discretion in fashioning jury instructions.**" *Id.* (emphasis added). Additionally, our Supreme Court has stated that "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014).

The standard charge for accomplice testimony, commonly referred to as "the corrupt and polluted source charge," *see Commonwealth v. Lawrence*, 165 A.3d 34, 44 (Pa. Super. 2017), is "designed specifically to address situations where one accomplice testifies against the other to obtain favorable treatment." *Commonwealth v. Smith*, 17 A.3d 873, 906 (Pa. 2011). The instruction "directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution." *Id.*

Here, the trial court gave the following jury instruction on accomplice testimony:

> I have defined accomplice liability to you. I have indicated that a person is an accomplice of another person in the commission of a crime if he or she has the intent of promoting or facilitating the commission of that crime, solicits the other person to commit it, or aids or agrees or attempts to aid or agree—excuse me, or attempts to aid the other person in committing the planning. An accomplice is a person who knowingly and voluntarily cooperates with or aids another person in committing an offense. **When a Commonwealth witness is an accomplice, his or her testimony has to be judged by special precautionary rules.**

- 5 -

**He or she may testify falsely in the hope of obtaining favorable treatment or for some other motive.** On the other hand, an accomplice may be a truthful witness.

The special rules that I will give you are meant to help you distinguish between truthful and false accomplice testimony. In view of Dustin Taylor's testimony, you must decide whether Dustin Taylor was an accomplice of the crimes charged. **If, after considering all of the evidence, you find that he was an accomplice, then you must apply the special rules to his testimony.** Otherwise, you would ignore those rules. Use this test to determine whether Dustin Taylor was an accomplice. Again, an accomplice is a person who knowingly and voluntarily cooperates with and/or aids in the commission of a crime.

**Special rules that apply to accomplice testimony are these: First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and tainted source; second, you should examine the testimony of an accomplice closely and accept it only with care and caution; third, you should consider whether the testimony of an accomplice is supported in full or in part by other evidence.**

Accomplice testimony is more dependable if it is supported by independent evidence. However, even if there is no independent supporting evidence, you may still find the Defendant guilty solely on the basis of an accomplice's testimony if[,] after using these special rules I've just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the Defendant is guilty.

**Again, the special rules are, first, you should view the testimony of the accomplice with disfavor because it comes from a corrupt and tainted source. And second, you should examine the testimony of an accomplice closely and accept it only with care and caution.**

Separate and apart from the fact of whether that witness was an accomplice, **you should examine closely and carefully and receive with caution the testimony of Dustin Taylor if you find he has provided testimony with the intent to receive a benefit after giving that testimony.**

N.T. Jury Trial, 12/10/21, at 1102-06 (emphasis added).

Based on the highlighted language above, we are not persuaded by King's argument that the trial judge's accomplice testimony instruction was "inadequate, not clear[,] or ha[d] a tendency to mislead or confuse, rather than clarify, a material issue [for the jury]." **Sandusky**, **supra** at 667. The court's instruction was not "watered down," and, on the contrary, clearly advised the jury that if they found Taylor was King's accomplice, they were required to receive his testimony with disfavor because it came from a corrupt and tainted source who may testify falsely to receive favor. **See Smith**, **supra** at 906 ("In any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution.").

Moreover, the court gave a detailed instruction on judging the credibility of witnesses, stating:

> As judges of the facts, you are the sole judges of the credibility of witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness's testimony and decide whether to believe all[,] part[,] or none of that testimony.
>
> The following are some of the factors that you should and may consider when judging credibility, deciding who to believe, what testimony to believe or not: Was the witness able to see, hear, or know the things about which he testified; how well could the witness remember and describe the things about which he or she testified; did the witness testify in a convincing manner; how did he or she look, act, and speak while testifying; was his or her testimony uncertain, confused, self-contradictory[,] or evasive; did the witness have any interest in the outcome of the case; did the witness have any bias, prejudice, or other motive that might affect his or her testimony; how well does the testimony of the witness square with the other evidence in the case, including the

testimony of other witnesses; was it contradicted or supported by other testimony and evidence; did it make sense?

If you believe some part of the testimony of a witness to be inaccurate, consider whether the inaccuracy cast[s] doubt upon the rest of his or her testimony. This may depend on whether he or she has been inaccurate in an important matter or only a minor detail and on any possible explanation. For example, did the witness make an honest mistake or simply forget, or did he or she deliberately falsify [testimony].

While you are judging the credibility of each witness, you are likely to be judging the credibility of other witnesses or evidence. If there is a real irreconcilable conflict, it is up to you to decide which, if any, conflicting testimony to believe.

N.T. Jury Trial, 12/10/21, at 1091-94. *See Smith*, *supra* at 906 ("If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony."). Accordingly, we find that the court's charge was not erroneous. *See also Sandusky*, *supra*.

After our review, we conclude that the trial court's instruction properly directed the jury to view Taylor's accomplice testimony with disfavor and accept it only with care and caution. Accordingly, we find no abuse of discretion. *Baker*, *supra*.

Next, King argues that the felony murder sentencing scheme is unconstitutional under the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution. This claim, too, is meritless.

In **Commonwealth v. Rivera**, 238 A.3d 482 (Pa. Super. 2020), this Court addressed nearly identical arguments, where we noted that in **Commonwealth v. Cornish**, 370 A.2d 291 (Pa. 1977), **Commonwealth v. Yuknavich**, 295 A.2d 290 (Pa. 1972), and **Commonwealth ex rel. Smith v. Myers**, 261 A.2d 550 (Pa. 1970), our Supreme Court "upheld the constitutional validity of the felony-murder statute." **Rivera**, 238 A.3d at 502. **See Commonwealth v. Henkel**, 938 A.2d 433, 446 (Pa. Super. 2007) (imposition of life sentence not unconstitutional "cruel and unusual punishment" under United States and Pennsylvania constitutions); **see also Commonwealth v. Middleton**, 467 A.2d 841, 846-47 (Pa. 1983) (sentence of life imprisonment for offense of felony-murder not unconstitutionally disproportionate; comparison of such sentence with sentences imposed in Commonwealth for other felonies demonstrated legislature contemplated seriousness of felony-murder should be matched by equally severe penalty and sentence for felony-murder comported with range of sentences found proper in other jurisdictions).  We are similarly bound by this precedent.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/28/2023